IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

**CENTER FOR INDIVIDUAL**
**FREEDOM, INC.,**

    **Plaintiff,**

v.                                                                                  CIVIL ACTION No. 1:08-00190

**BETTY IRELAND, West Virginia**
**Secretary of State, and**
**TIMOTHY D. BOGGESS, Mercer County**
**Prosecuting Attorney, as a**
**representative of the class of**
**prosecuting attorneys in the**
**State of West Virginia,**

    **Defendants,**

**WEST VIRGINIA EDUCATION ASSOCIATION,**
**WEST VIRGINIA AMERICAN FEDERATION OF**
**LABOR AND CONGRESS OF INDUSTRIAL**
**ORGANIZATIONS, ROBERT M. BASTRESS, JR.,**
**MARGARET L. WORKMAN, AND MENIS E.**
**KETCHUM,**

    **Intervening Defendants.**

### MEMORANDUM OPINION

Pending before the court is the plaintiff's motion for a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure.  (Doc. Nos. 4, 5.)  Having reviewed the record and applicable law and having heard argument from all parties, the plaintiff's motion for preliminary injunction is granted in part and denied in part for the reasons outlined below.  The court's decision will be put into effect by an Order Granting Preliminary Injunction filed herewith.

## I.     Background

The plaintiff, Center for Individual Freedom, Inc., ("Center"), filed this civil action on March 21, 2008, seeking declaratory and injunctive relief arising under the Constitution of the United States.  (Doc. No. 1.)  The Center is "a non-partisan, non-profit organization" whose stated mission is to protect and defend the individual freedoms and rights guaranteed by the United States Constitution.  (Id. at 2.)  The defendants in this action are Betty Ireland, the West Virginia Secretary of State, and Timothy Boggess, the prosecuting attorney for Mercer County, West Virginia.  (Id. at 3.)  The Center has sued Mr. Boggess as a representative of the class of prosecuting attorneys in the State of West Virginia, but recognizes that class certification is not yet necessary as any injunctive relief directed to the named defendants will adequately protect the Center's interests at this juncture of the case.  (Id. at 4 n.1 (citing West Virginians for Life, Inc. v. Smith, 919 F. Supp. 954, 955-56 (S.D. W. Va. 1996).)[1]

---

[1] The court also finds that the West Virginia State Election Commission ("Commission"), is neither an indispensable nor a necessary party to this action.  The Secretary of State is the "chief election official" in the State of West Virginia, W. Va. Code § 3-1A-6, and a statutorily mandated member of the Commission, W. Va. Code § 3-1A-1.  Accordingly, her presence, via the West Virginia Attorney General's Office, will adequately protect any interest of the Commission's.

The Center intends to use various media, including broadcast, print, and telephone banks, to speak to the public in the Southern District of West Virginia about litigation reform and other related justice issues, and anticipates that these communications would occur from April to mid-May and October to early November, in light of West Virginia's May 13, 2008, primary, and the November 4, 2008, general election.[2]  (Id. at 17.)

Although the Center has already expended substantial resources to achieve its design, the organization now fears that its planned speech may be deemed to violate certain provisions of the West Virginia Code and West Virginia Code of State Rules that were designed to regulate the corporate financing of elections for public office, (id. at 5-7; W. Va. Code §§ 3-8-8(a), 3-8-8(b)(2)(H), 3-9-14; W. Va. Code R. § 143-1-3), or in the alternative, that the execution of its planned speech may trigger various reporting and disclosure requirements, (id. at 7-12; W. Va. Code §§ 3-8-2, 2b, 5, 5a), with which it cannot and will not comply.  Violation of these laws may lead to hefty civil and

---

[2]  Specifically, the Center claims that it will not "expressly advocate" for the election or defeat of any particular candidate, but will merely "refer to West Virginia candidates to illustrate its points and ask members of the public to contact the candidates and petition them to take or maintain certain positions."  (Id. at 17-19.)

criminal penalties and even criminal conviction.  W. Va. Code §§ 3-8-7, 3-8-8, 3-9-14.

Particularly, the Center argues that the foregoing provisions of the West Virginia Election Code are facially vague and untailored, and therefore violate the First Amendment by chilling free speech.  (Id. at 17-20.)  They seek a declaratory judgment holding the challenged provisions unconstitutional, and a preliminary and/or permanent injunction prohibiting the defendants from enforcement.  (Id.)

On April 7, 2008, the defendants, along with the amici curiae and intervening-defendants Robert M. Bastress Jr., Margaret L. Workman, Menis E. Ketchum, West Virginia Education Association, and West Virginia American Federation of Labor and Congress of Industrial Organizations, responded in opposition to the Center's request for a preliminary injunction arguing that a preliminary injunction should not issue where (1) there is not a substantial likelihood that the Center will prevail on the merits, (2) the Center has not and will not suffer irreparable harm in the absence of a preliminary injunction, (3) the interested parties and the general public will suffer substantial injury if a preliminary injunction does issue, (4) the Center failed to join the Commission, an indispensable party, and (5) the Center delayed in filing the instant action and is now subject to the doctrine of laches.  (Doc. Nos. 17, 18-3, 19, 22,

23.) On April 9, 2008, the Center replied and the court conducted a hearing on the matter providing all parties the opportunity to be heard. (Doc. Nos. 29, 30.) Accordingly, the motion is now ripe for adjudication.

## II. Applicable Standard

"[A] preliminary injunction is an extraordinary remedy, to be granted only if the moving party clearly establishes entitlement to the relief sought." Hughes Network Sys., Inc. v. InterDigital Commc'n. Corps., 17 F.3d 691, 693 (4th Cir. 1994) (quoting Fed. Leasing, Inc. v. Underwriters at Lloyd's, 650 F.2d 495, 499 (4th Cir. 1981)). In evaluating whether to grant a preliminary injunction, a court must consider: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the injunction is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. Safety-Kleen, Inc. v. Wyche, 274 F.3d 846, 859 (4th Cir. 2001) (citing Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1991)).

In most actions, the likelihood of irreparable harm to the plaintiff is the first factor a court should consider. See Direx Israel, Ltd., at 812 (explaining that the court must determine whether the harm likely to be suffered by plaintiff, if relief is denied, is actual and imminent or merely remote and speculative).

The Fourth Circuit Court of Appeals has, however, recently held that when "the irreparable harm that [the plaintiff] has alleged is inseparably linked to his claim of a violation of his First Amendment rights . . . analysis of [the plaintiff's] likelihood of success on the merits" becomes the first and the most important factor for a court to consider. Newsom ex rel. Newsom v. Albermarle County Sch. Bd., 354 F.3d 249, 254-55 (4th Cir. 2003) (the appellate court first turned to the likelihood of success on the merits, then addressed the other preliminary injunction factors in determining whether a school dress code violated the First Amendment); Giovani Caradola, Ltd. v. Bason, 303 F.3d 507, 511 (4th Cir. 2002) (explaining that where a plaintiff alleges a First Amendment violation, the irreparable harm determination cannot be made until it has been determined whether the plaintiff has a likelihood of success on the merits).

**III. Analysis**

Because the West Virginia campaign finance laws challenged by this action set limits on political speech they are subject to strict scrutiny. FEC v. Wis. Right to Life, Inc., 127 S. Ct. 2652, 2664 (2007) ("WRTL"). Under such an analysis, the burden rests on the government to prove that the challenged laws further a compelling interest and are narrowly tailored to achieve that interest. WRTL, 127 S. Ct at 2664. Even where an opposing party moves for a preliminary injunction, and must therefore prove its

likelihood of success on the merits, the ultimate burden of establishing the constitutionality of the challenged law remains with the government.  Ashcroft v. ACLU, 542 U.S. 656, 666 (2004) ("As the Government bears the burden of proof on the ultimate question of [the challenged law's] constitutionality, [a party moving for a preliminary injunction] must be deemed likely to prevail [on the merits] unless the Government has shown that [the challenged law] meets [the requisite constitutional standard].").

Accordingly, the overarching question presented to this court is whether the defendants can show that the challenged laws satisfy the demands of the First Amendment.  If the defendants demonstrate that these laws further a compelling interest and are narrowly tailored to achieve that interest, thereby eviscerating the Center's chances of succeeding on the merits, then it becomes improbable that a preliminary injunction will issue.  If on the other hand, the defendants fail to demonstrate that these laws further a compelling interest and are narrowly tailored to achieve that interest, it becomes probable that a preliminary injunction will issue, but the court will still weigh the other three factors: irreparable harm to the plaintiff, harm to the defendants, and the public interest.

**A.   The Center's Likelihood of Success on the Merits**

"Precision of regulation must be touchstone" where core First Amendment rights are regulated.  Buckley v. Valeo, 424 U.S.

1, 41 (1976).  This is a maxim of First Amendment law.  Moreover, the necessity for precision reaches its apex where, as here, criminal penalties for core speech are threatened.  Buckley, 424 U.S. at 41, 76.  Thus, a law which "fails to clearly mark the boundary between permissible and impermissible speech" will be held vague.  Buckley, 424 U.S. at 41; compare with McConnell v. FEC, 540 U.S. 93, 194 (2003) (finding that the BCRA's definition of "electioneering communications" "raises none of the vagueness concerns that drove our analysis in Buckley," because the definition is easily understood and objectively determinable).

    Courts have consistently held the phrases "in connection with," W. Va. Code R. § 146-1-3, "advocating or opposing," W. Va. Code § 3-8-5(a), "in support of or opposition to," W. Va. Code §§ 3-8-1a(14), 3-8-2(b), and "for the purpose of influencing," W. Va. Code §§ 3-8-8(b)(2)(H), and 3-9-14, to be vague, because all of those phrases are reasonably susceptible of two distinct readings: one encompassing only express advocacy and another encompassing both express and issue advocacy.  For a listing and short discussion of those cases see document number five at pages ten through thirteen.  The phrase "for the payment of any primary or other election expenses," W. Va. Code § 3-8-8(a), has not, however, to this court's knowledge, been reviewed by any other court.  This phrase can also be read as encompassing both express advocacy and issue advocacy because even a pure issue ad

influences voters and thus could reasonably be considered an election expense.

Accordingly, the court finds it likely that the Center will prevail on its claim that West Virginia Code Sections 3-8-1a(14) (definition of "independent expenditure"), 3-8-2(b) (independent expenditure reporting requirements), 3-8-5(a) (general reporting and disclosure requirements), 3-8-8(a) (general prohibition against corporate contributions for election expenses), 3-8-8(b)(2)(H) (prohibition against corporate expenditures to influence voters), and 3-9-14 (penalties for corporations that give things of value to influence any election), and West Virginia Code of State Rules Section 146-1-3 (prohibition against corporate expenditures made "in connection with state elections"), are vague.

This court must also determine whether the Center's overbreadth and vagueness challenge to West Virginia's reporting requirements for "electioneering communications," W. Va. Code § 3-8-2b, and West Virginia's definition of "electioneering communications," W. Va. Code § 3-8-1a(11), which unmistakably encompasses issue advocacy, is likely to succeed on the merits. Because the Supreme Court in <u>McConnell</u>, 540 U.S. at 193-202, upheld the BCRA's reporting requirement for "electioneering communications" as constitutional, this court must turn there first.

Although West Virginia's definition of "electioneering communications" is broader than its federal counterpart,[3] both laws explicitly seek to regulate issue advocacy.  The McConnell Court found such regulation permissible, in part, because "the First Amendment does not require Congress to treat so-called issue advocacy differently from express advocacy," and because the regulation of issue ads serves the compelling government interests of "providing the electorate with information, deterring actual corruption, and avoiding any appearance thereof."  Id. at 194, 196; see also Buckley, 424 U.S. at 3 (explaining that disclosure and reporting requirements serve a substantial governmental interest by informing the electorate and preventing corruption of the political process).

Later in the opinion, however, when reviewing the BCRA's prohibition of corporate expenditures for "electioneering communications," the court hinted that the compelling government interests, recited above, might not justify a restriction of the corporate funding of issue ads.  Id. at 205-06.  This suspicion was confirmed by Justice Roberts writing for the majority in WRTL, when he stated that "[w]e further conclude that the interests held to justify restricting corporate campaign speech

---

[3] West Virginia's definition of "electioneering communications" encompasses significantly more media and publication outlets than the federal definition and regulates speech addressing fewer people than the federal definition. (Doc. No. 5 at 16; Doc. No. 17 at 14.)

[express advocacy] or its functional equivalent do not justify restricting issue advocacy." 127 S. Ct. 2569. Thus it appears a constitutional line between restriction of issue advocacy and mere disclosure requirements for activities constituting issue advocacy, has been drawn in the sand.

In this case, as discussed in further detail below, West Virginia Code Section 3-8-8 will be enjoined to reach only express advocacy. The result of the coming preliminary injunction is that West Virginia Code Sections 3-8-2b and 3-8-1a(11), read cumulatively, will only demand certain disclosures from persons engaging in issue advocacy, or as stated in the negative, will not restrict corporate expenditures on issue advocacy. Accordingly, the court finds it unlikely that Section 3-8-2b will be held overbroad solely on the ground that it regulates issue advocacy.

Despite West Virginia's compelling interests in requiring persons engaged in issue advocacy to make certain disclosures, the portions of Section 3-8-1a(11) that are more broad than its federal counterpart do not appear to be narrowly tailored. Stated differently, the excessive portions of Section 3-8-1a(11) may not further the compelling interests at which they are aimed. The court is not convinced that there exists an empirical justification for regulating mailings, faxes, emails, phone banks, leaflets, pamphlets, and other printed or published

-11-

materials.[4]  These modes of communication, as opposed to television and radio broadcasts, are unlikely to create the appearance of corruption because they are neither as expensive nor as effective.  Moreover, the inclusion of these additional media create vagueness problems in the rest of the definition.  See W. Va. Code § 3-8-1a(11) ("publically disseminated," "substantially similar," and "targeted to the relevant electorate").  Accordingly, the court finds it likely that West Virginia's definition of "electioneering communications," W. Va. Code § 3-8-1a(11), will fail for vagueness and lack of tailoring.

**B.   Irreparable Harm to the Center**

In the instant case, the Center has alleged that due to poor legislative drafting it cannot determine whether West Virginia's corporate expenditure prohibitions and reporting requirements apply to various issue ads they wish to disseminate before the May 13, 2008, primary and the November 4, 2008, general election.  The court has reviewed those provisions of West Virginia law and determined that they appear to be vague.  Because of this vagueness, it is fair to say that the Center has been discouraged

---

[4] The West Virginia Election Code does not contain legislative findings or a statement of purpose explaining the State's justification for the various prohibitions and/or reporting requirements set forth therein.  This would have been useful.  See, e.g., Walters v. Nat'l Ass'n of Radiation Survivors, 473 U.S. 305, 330 n.12 (1985); Rostkerr v. Goldberg, 453 U.S. 57, 72-74 (1981); Cal. ProLife Council Political Action Comm. v. Scully, 989 F. Supp. 1282, 1294 (E.D. Cal. 1998).

from engaging in speech safeguarded by the First Amendment. This chill, standing alone, constitutes irreparable injury. See West Virginians for Life, Inc., 919 F. Supp. at 958 (citing Elrod v. Burns, 427 U.S. 347, 373 (1976) for the proposition that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). And such irreparable injury will continue unless this court enters an injunction or otherwise narrows the infirm laws. The court therefore concludes that the present and future loss to the Center's right to free speech constitutes irreparable harm of significant magnitude.[5]

**C. Likelihood of Harm to the Defendants if the Preliminary Injunction is Granted**

In contrast to the significant harm which the Center will suffer if the injunction is denied, the degree of harm suffered by the defendants, should an injunction issue, is slight. See West Virginians for Life, Inc., 919 F. Supp. at 958. A carefully tailored injunction will not unduly restrict the defendants' power to regulate the election process in legitimate ways, nor will it prejudice intervening defendants, Robert M. Bastress Jr., Margaret L. Workman, Menis E. Ketchum, all candidates for the

---

[5] In holding so, the court was not persuaded by the intervening defendants' laches argument. (Doc. No. 18-3 at 4-8.) Particularly, the court cannot identify a "lack of diligence" on the part of the Center. If the suit had been brought too far in advance of the primary and general election, standing and ripeness concerns would have been raised.

Supreme Court of West Virginia, by taking away their ability to identify who is speaking about them.  See id.

**D.    Public Interest**

Protection of freedom of speech in a democratic society is of critical public interest.  See West Virginians for Life, Inc., 919 F. Supp. at 960.  In this case, it appears that several provisions in the West Virginia Election Code are vague, and consequently chill the public's right to speak on political matters.  Accordingly, the court finds that the public has a strong interest in having the challenged laws enjoined or clarified.

**E.    Scope of the Preliminary Injunction**

The Supreme Court's opinion in Buckley v. Valeo, 424 U.S. 1, 1 (1976), remains the leading case in the world of campaign finance law.  See Randall v. Sorrell, 548 U.S. 230, 231 (2006) (citing McConnell, 540 U.S. at 194 for the proposition that "[f]or over thirty years, in considering the constitutionality of a host of campaign finance statutes, this Court has adhered to Buckley's constraints, including those on expenditure limits.").

In Buckley, candidates for federal office in conjunction with various political parties and organizations brought suit challenging the constitutionality of the Federal Election Campaign Act ("FECA").  In relevant part, the plaintiffs sought a declaration that FECA's $1,000.00 ceiling on spending "relative

-14-

to a clearly identified candidate," and reporting obligations persons making expenditures "for the purpose . . . influencing" a nomination or election, were impermissibly vague.  Id. at 19-20.

The Buckley Court agreed, finding that "the use of so indefinite a phrase as 'relative to' a candidate fails to clearly mark the boundary between permissible and impermissible speech." Id. at 39-41.  Rather than strike the provision down, however, the Court narrowed its construction to communications containing the magic words of express advocacy.  Id. at 44 n.52 ("vote for," "elect," "support," "cast you ballot for," "Smith for Congress," "vote against," "defeat," "reject.").  In other words, the Buckley Court imposed a limiting construction on the statute, bringing it within constitutional bounds by drawing a line between express advocacy and issue advocacy.

The defendants seem to contend that Buckley's line drawing exercise is no longer the law in light of McConnell, 251 U.S. at 93.  (Doc. Nos. 17, 18.)  This court disagrees.  In McConnell, 251 U.S. at 190-194, the Supreme Court sustained a portion of the BCRA which prohibited corporations from making expenditures to broadcast electioneering communications on the grounds that, absent any vagueness concerns, courts must "respect . . . the legislative judgment that the special characteristics of the corporate structure require particularly careful regulation." Because McConnell did not involve a vagueness challenge, the case

-15-

"does not obviate the applicability of Buckley's line-drawing exercise where, as in this case, [a court] is confronted with a vague statute." See Ctr. for Individual Freedom v. Carmouche, 449 F.3d 655, 665 (5th Cir. 2006) (citing Anderson v. Spear, 356 F.3d 651, 664-65 (6th Cir. 2004)). The court, therefore, sees no reason why it should not adhere to Buckley's line drawing exercise as a form of statutory construction.

Accordingly, to thaw the chill of free speech imposed by the West Virginia Election Code, the court enjoins the defendants from applying West Virginia Code Sections 3-8-1a(14), 3-8-2(b), 3-8-5(a), 3-8-8(a), 3-8-8(b)(2)(H), and 3-9-14, and West Virginia Code of State Rules Section 146-1-3, to anything other than communications that expressly advocate the election or defeat of a clearly identified candidate. In limiting the applicability of these provisions to communications constituting express advocacy, this court adopts the bright-line definition of the term as stated in Buckley. 424 U.S. at 44 n.52 ("vote for," "elect," "support," "cast you ballot for," "Smith for Congress," "vote against," "defeat," "reject.").

To cure the vagueness and overbreadth of West Virginia's definition of "electioneering communication," W. Va. Code § 3-8-1a(11), the court limits its scope to only the broadcast media covered by its federal counterpart, and enjoins the defendants from applying Section 3-8-2b's reporting and disclosure

requirements to the following forms of political advocacy: mailings, faxes, emails, phone banks, leaflets, pamphlets, and other printed or published materials.

**IV. Conclusion**

For the reasons stated above, the Center's Motion for Preliminary Injunction is **GRANTED** in part and **DENIED** in part. The court's decision will be put into effect by an Order Granting Preliminary Injunction filed herewith.

The Clerk is directed to mail a copy of this Memorandum Opinion to all counsel of record.

It is **SO ORDERED** this 22nd day of April, 2008.

                ENTER:

                *David A. Faber*
                David A. Faber
                United States District Judge