IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

CENTER FOR INDIVIDUAL FREEDOM, INC.,

        Plaintiff,

v.                                    CIVIL ACTION NO. 1:08-cv-00190

BETTY IRELAND and
TIMOTHY D. BOGGESS,

        Defendants,

v.

WEST VIRGINIA EDUCATION
ASSOCIATION, et al.,

        Intervenor Defendants.


WEST VIRGINIANS FOR LIFE, INC.
and ZANE LAWHORN,

        Plaintiffs,

v.                                    CIVIL ACTION NO. 1:08-cv-01133

BETTY IRELAND and
TIMOTHY D. BOGGESS,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs Zane Lawhorn and West Virginians For Life (WVFL)'s Motion to Stay [Docket 182]. In that motion, Plaintiffs represent that the Fourth Circuit recently issued a panel opinion in *Real Truth About Obama, Inc. v. FEC (RTAO)*, 575 F.3d 342, No. 08-1977 (4th Cir. 2009), that may affect the outcome of this case. Further, Plaintiffs note that counsel for *RTAO* has filed a petition for rehearing en banc in the Fourth Circuit, challenging the holdings announced by the *RTAO* panel. Thus, Plaintiffs seek a stay of the instant case until *RTAO* is resolved on appeal. Plaintiff Center for Individual Freedom (CFIF) opposes the stay, noting that *RTAO*'s holding is expressly limited to the issues in that case and to the proper standard for issuing a preliminary injunction. CFIF further states that the instant case has been delayed on several occasions and notes that any appeal in RTAO may not necessarily address any issues present here. Finally, CFIF represents that it seeks certainty in the issue of campaign finance regulation in West Virginia in light of the upcoming 2010 election cycle. The Court has reviewed *RTAO* and its previous Memorandum Opinion [Docket 125] granting Plaintiffs' motions for a preliminary injunction, and will proceed to rule on the motion to stay.

In *RTAO*, a panel consisting of Circuit Judge Paul V. Niemeyer, Senior Circuit Judge Arlen Beam of the Eighth Circuit, sitting by designation, and District Judge Joseph F. Anderson, Jr., of the District of South Carolina, also sitting by designation, reviewed a district court's denial of a preliminary injunction motion seeking to enjoin as unconstitutional the application of three FEC regulations: a definition of "express advocacy," a definition of "support or oppose," and a regulation of corporate or union funds expended for electioneering communications. Before it reached the constitutional issues, however, the *RTAO* court overruled the long-standing preliminary injunction

2

standard articulated in *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977). The *RTAO* court then applied that standard in reviewing the district court's ruling, holding that under the new standard, the plaintiff was not likely to succeed on the merits of its constitutional challenge. In issuing that ruling, the court expressly stated: "[W]e reach the same conclusion reached by the district court that [the plaintiff] has not, at this preliminary stage in the litigation, made a *clear showing* that it is likely to succeed on the merits at trial, even though we do not decide the merits nor intend to foreclose any outcome on the merits." *RTAO*, 575 F.3d at ___, slip op. at 10.

Relevant to the instant case, the *RTAO* court relied heavily on the language used by Chief Justice Roberts in *FEC v. Wisc. Right to Life, Inc. (WRTL)* to determine whether a campaign finance regulation exceeds its constitutional limitations: "[A] court should find that an ad is the functional equivalent of express advocacy only if the ad is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate." 551 U.S. 449, 469–70 (2007). The court then held that the statute at issue in *RTAO* is likely constitutional because it

> cabins the application of the regulation to communications that "could *only* be interpreted by a reasonable person as containing advocacy of the election or defeat of one or more clearly identified candidate(s)" (emphasis added) and where "[r]easonable minds could not differ as to whether it encourages actions to elect or defeat one or more clearly identified candidate(s) or encourages some other kind of action."

575 F.3d at ___, slip op. at 12 (alterations in original).

This holding, however, appears to be at odds with the Fourth Circuit's previous holding in *N.C. Right to Life, Inc. v. Leake*, 525 F.3d 274 (4th Cir. 2008), and this Court's previous opinion granting the preliminary injunction motions, which relied heavily on both *Leake* and *WRTL*. In *Leake*, the Fourth Circuit struck down a North Carolina regulation because it was "clearly 'susceptible' to multiple interpretations and capable of encompassing ordinary political speech

3

unrelated to electoral activity." 525 F.3d at 284. The *Leake* court also held that the statute contravened the Supreme Court's holding in *WRTL* because it "determines whether speech is regulable based on how a 'reasonable person' interprets a communication in light of four 'contextual factors.'" *Leake*, 525 F.3d at 283. Further, the *Leake* court condemned an "*ad hoc*, totality of the circumstances-based approach" when evaluating the constitutionality of statutes that regulate political speech. *Id.*

Although the *RTAO* court attempted to distinguish *Leake* by noting that the FEC regulation was not susceptible to multiple interpretations, the two holdings nevertheless appear to remain at odds. First, the FEC regulation at issue in *RTAO* directs that the communication be "taken as a whole," 11 C.F.R. § 100.22(b), which could well be at odds with *Leake*'s admonition against a "totality of the circumstances-based approach." 525 F.3d at 283. Second, the *RTAO* court found no fault in a provision of the FEC regulation which asks how a "reasonable person" might interpret a communication based on what "reasonable minds" might think. 11 C.F.R. § 100.22(b). However, the *Leake* court counseled against the use of a "reasonable person" standard when evaluating whether a communication is susceptible to multiple "reasonable interpretations." *See* 525 F.3d at 285. As this Court noted in its previous opinion granting Plaintiffs' motion for a preliminary injunction, a "reasonable person" may interpret a particular communication in a number of different ways, a distinction that likely would not have escaped Chief Justice Roberts when he wrote for the majority in *WRTL*. (*See* Docket 125 at 22.) Further, in the absence of guidance as to how a "reasonable person" might interpret a communication, courts must resort to a "test based on the actual effect speech will have on an election or on a particular segment of the target audience,"—a

4

practice which Chief Justice Roberts labeled as flawed and noted would "unquestionably chill a substantial amount of political speech." *WRTL*, 551 U.S. at 469.

In addition to this apparent contradiction, Plaintiffs Lawhorn and WVFL have set forth a number of alleged errors committed by the *RTAO* panel that *RTAO* plans to challenge in its petition for rehearing and, if necessary, on appeal to the Supreme Court. (*See* Docket 182 at 3–4.) Because this case shares a number of similar issues with *RTAO*, the outcome of any petition for rehearing and, possibly, any appeal to the Supreme Court may affect the resolution of this case. Moreover, because the *RTAO* panel consisted of only one Fourth Circuit judge and because the holdings implicate a variety of important Fourth Circuit precedents, there is at least the potential for the petition for rehearing to be granted. The outcome of a rehearing en banc might very well result in greater clarity on these too often cloudy issues. Further, since this Court has previously issued a preliminary injunction based on a finding of irreparable harm to Plaintiffs and a likelihood of success on the merits of their constitutional claims, the injunction could continue in place without further harm to Plaintiffs until the law becomes more settled. Thus, the need for immediate clarity as to this issue may not be as important given the potential changes in the controlling precedent that may be forthcoming. In the meantime, the preliminary injunction will operate to preserve the status quo.

Based on the foregoing, Plaintiffs Zane Lawhorn and WVFL's Motion to Stay [Docket 182] is **GRANTED,** and the case is hereby **STAYED**. The Clerk is accordingly **DIRECTED** to place the case on the inactive docket pending further order of this Court, and any dates and deadlines currently in place are hereby **SUSPENDED**. It is further **ORDERED** that the previous Memorandum Opinion [Docket 125] and Preliminary Injunction Order [Docket 123] are to remain

in full force and effect during the stay. Finally, Plaintiffs Lawhorn and WVFL are **DIRECTED** to file with the Court a written notification of the outcome of the petition for rehearing and of any other developments relevant to the outcome of this case.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                ENTER:        September 16, 2009

                THOMAS E. JOHNSTON
                UNITED STATES DISTRICT JUDGE