## In the United States District Court
## for the District of West Virginia
## Bluefield Division

| | |
|---|---|
| **Center for Individual Freedom, Inc.,**<br><br>                                  *Plaintiff*<br><br>      *v.*<br><br>**Natalie E. Tennant,** West Virginia Secretary of State, and Timothy D. Boggess, Prosecuting Attorney for Mercer County, as a representative of the class of prosecuting attorneys in the state of West Virginia,<br><br>                                  *Defendants*<br><br>**West Virginians for Life, Inc.,** and Zane Lawhorn,<br><br>                                *Plaintiffs,*<br><br>      *v.*<br><br>**Natalie E. Tennant,** in her official capacity as Secretary of State for West Virginia and as a member of the West Virginia State Election Commission; Gary A. Collias, William N. Renzelli, Robert Rupp, and Cindy Smith, in their official capacities as members of the West Virginia State Election Commission; and Timothy D. Boggess, in his official capacity as Prosecuting Attorney for Mercer County, West Virginia, as representative of the class of prosecuting attorneys in West Virginia,<br><br>                                  *Defendants* | Civil Action No. 08-cv-00190 |

## Plaintiffs WVFL and Lawhorn's Second Summary Judgment Motion

1

# Table of Contents

Table of Contents ............................................................... 2

I.   Background ............................................................... 3

    A.   Plaintiffs ............................................................... 3
    B.   Defendants ............................................................ 3
    C.   West Virginia Law .......................................... 4

        1.   Regulation of WVFL as a Political Committee ............................ 5
        2.   Regulation of Independent Expenditures ..................................... 7
        3.   Regulation of Electioneering Communications ......................... 12
        4.   Independent Expenditure Ban .................................... 18

    D.   Future Speech ................................................... 19

II.  Conclusion ............................................................... 20

Certificate of Service ............................................................ 23

2

Plaintiffs West Virginians for Life, Inc. ("WVFL") and Zane Lawhorn ("Plaintiffs") file this second summary-judgment motion.[1]

With the law having changed,[2] Plaintiffs summarize the facts and claims here. Since the 2010 amendments to West Virginia law do *not* render the challenges to pre-2010 law moot,[3] Plaintiffs challenge *both* pre-2010 law *and* 2010 law.

## I.   Background

### A.   Plaintiffs

For the background on Plaintiffs WVFL and Lawhorn, they refer the Court to the first amended verified complaint.[4]

### B.   Defendants

For the background on Defendants, Plaintiffs also refer the Court to the first amended verified complaint.[5]

---

[1] The first summary-judgment motions are moot. Doc. 206 at 3-4.

[2] *E.g.,* Doc. 206 at 3.

[3] Doc. 206 at 3 (denying Defendants' motion to dismiss as moot).

[4] Doc. 128 ¶¶ 9-11 (WVFL), 12-13 (Lawhorn), 25-31 (WVFL's mission), 32-41 (WVFL's speech); *see also* WVFL SUMM. J. DEC. ¶¶ 3-9 (same) (PLS.' SECOND SUMM. J. MOT. Exh. 4, with Exhibits 1 to 3 to the second summary-judgment motion being case law, Exhibits 5 and 6 being exhibits to the WVFL summary-judgment declaration, and Exhibit 7 being the summary-judgment brief).

[5] Doc. 128 ¶ 21; *see also* DEF. TENNANT'S NOTICE OF SUBSTITUTION OF COUNSEL at 1 n.1.

### C.    West Virginia Law

WVFL reasonably believes that if it does not follow West Virginia law, Defendants will subject WVFL to enforcement and prosecution leading to civil liabilities and criminal penalties.[6]  Even if there were no civil liabilities or criminal penalties, being cleared provides little comfort to those whom government has wrung through a process that becomes the punishment.  *See, e.g., FEC v. Wisconsin Right to Life, Inc.,* 551 U.S. 449, 468 n.5 (2007) ("*WRTL II*").  "The right of free speech can be trampled or chilled even if convictions are never obtained" and civil liabilities are never imposed.  *FEC v. Hall-Tyner Election Campaign Comm.,* 678 F.2d 416, 422 n.15 (2d Cir. 1982), *cert. denied,* 459 U.S. 1145 (1983).

In four instances,[7] West Virginia law chills or has chilled[8] WVFL from proceeding with its speech.  It will do its speech only if the Court grants the requested relief.

In three instances,[9] WVFL fears enforcement or prosecution based on its past speech – namely, the Petition,[10] which WVFL circulated before filing this action and

---

[6] Doc. 128 ¶¶ 44-45.

[7] *Infra* Parts I.C.1-4.

[8] The term "pre-enforcement" applies before civil enforcement or criminal prosecution.  The term "chill" is a proper subset of "pre-enforcement" and applies in the First Amendment context when speakers, fearing civil enforcement or criminal prosecution, will not engage in their speech.  *See, e.g., New Hampshire Right to Life PAC v. Gardner,* 99 F.3d 8, 13-14 (1st Cir. 1996) ("*NHRL*").  Thus, "pre-enforcement" applies to all of WVFL's speech, while "chill" applies to some of the speech.

after the Court ruled on the preliminary-injunction motion.[11]   In four instances,[12] WVFL fears enforcement or prosecution based on other past speech – namely, the Newspaper Ads,[13] which WVFL did after the Court ruled on the preliminary-injunction motion.[14]

### 1.    Regulation of WVFL as a Political Committee

First, WVFL and Lawhorn reasonably fear that, based on WVFL's Radio Ad,[15] Mass Mailing[16]/Newspaper Ads, and Petition, WVFL is a political action committee ("PAC") or an unaffiliated PAC, and also a political committee.[17]   Then WVFL will have to comply with a panoply of burdens that West Virginia *via* these definitions imposes on organizations such as WVFL.[18]

---

[9] *Infra* Parts I.C.1-2, 4.

[10] Doc. 128 Exh. 6; WVFL SUMM. J. DEC. ¶ 5.

[11] WVFL SUMM. J. DEC. ¶ 2.

[12] *Infra* Parts I.C.1-4.

[13] WVFL SUMM. J. DEC. Exhs. 1-2 (PLS.' SECOND SUMM. J. MOT. Exhs. 5-6); WVFL SUMM. J. DEC. ¶ 5.

[14] WVFL SUMM. J. DEC. ¶ 3.

[15] Doc. 128 Exh. 4; WVFL SUMM. J. DEC. ¶ 5.

[16] Doc. 128 Exh. 5; WVFL SUMM. J. DEC. ¶ 5.

[17] Doc. 128 ¶ 61.

[18] Doc. 128 ¶ 62.

5

Under law that West Virginia did not change in 2010 except for the numbering:

(~~18~~16) "Membership organization" means a group that grants bona fide rights and privileges, such as the right to vote, to elect officers or directors and the ability to hold office, to its members and which uses a majority of its membership dues for purposes other than political purposes. "Membership organization" does not include organizations that grant membership upon receiving a contribution. …

(~~21~~19) "Political action committee" means a committee organized by one or more persons *for the purpose of supporting or opposing* the nomination or election of one or more candidates. The following are types of political action committees:

(A) A corporate political action committee, as that term is defined by subdivision (8)[19] of this section;

(B) A membership organization, as that term is defined by subdivision (18)[20] of this section;

(C) An unaffiliated political action committee, as that term is defined by subdivision (29)[21] of this section.

(~~22~~20) "Political committee" means any candidate committee, *political action committee* or political party committee. …

(~~29~~26) "Unaffiliated political action committee" means a *political action committee* that is not affiliated with a corporation or a membership organization.

*Compare* W. VA. CODE § 3-8-1a (2008) *with id.* § 3-8-1a (2010) (emphasis added).[22]

---

[19] This read "8" in the 2008 law. It appears that it should read "7" now.

[20] This read "18" in the 2008 law. It appears that it should read "16" now.

[21] This read "29" in the 2008 law. It appears that it should read "26" now.

[22] *Available at*

6

Therefore, Plaintiffs WVFL and Lawhorn seek a declaratory judgment that the PAC, unaffiliated-PAC, and political-committee definitions, W. VA. CODE § 3-8-1a.19, 20, 26 (2010), and the corresponding sections in pre-2010 law, are unconstitutional as applied to WVFL's speech and facially.  WVFL and Lawhorn further ask that the Court permanently enjoin their enforcement.[23]

This will allow WVFL to do its speech, and materially similar speech in the future, without fear of WVFL's becoming a PAC, unaffiliated-PAC, or political committee, and without fear of enforcement or prosecution.  It will also allow Lawhorn to receive WVFL speech and remove the fear of enforcement or prosecution for WVFL's having distributed the Petition and the Newspaper Ads without complying with political-committee burdens.

## 2.    Regulation of Independent Expenditures

Second, WVFL and Lawhorn reasonably fear WVFL's Radio Ad, Mass Mailing/Newspaper Ads, and Petition are express advocacy, are independent expenditures, and that WVFL must comply with independent-expenditure reporting, attribution, and disclaimer requirements.[24]

---

http://www.legis.state.wv.us/Bill_Status/bills_text.cfm?billdoc=HB4647%20SUB%20ENR.htm&yr=2010&sesstype=RS&i=4647 (all Internet sites visited Sept. 10, 2010).

[23] Doc. 128 ¶ 238-39.

[24] Doc. 128 ¶ 48; WVFL SUMM. J. DEC. ¶¶ 5-7.

In 2010, West Virginia amended its 2008 express-advocacy definition as follows:

"Expressly advocating" means any communication that:

(A) Uses phrases such as "vote for the Governor," "re-elect your Senator," "support the Democratic nominee for Supreme Court," "cast your ballot for the Republican challenger for House of Delegates," "Smith for House," "Bob Smith in '04," "vote Pro-Life" or "vote Pro-Choice" accompanied by a listing of clearly identified candidates described as Pro-Life or Pro-Choice, "vote against Old Hickory," "defeat" accompanied by a picture of one or more candidates, "reject the incumbent,"; ~~or~~

<u>(B)</u> ~~e~~Communications of campaign slogans or individual words, that ~~in context~~ can have *no other reasonable meaning than to urge* the election or defeat of one or more clearly identified candidates, such as posters, bumper stickers, advertisements, etc. which say "Smith's the One," "Jones '06," "Baker"; or

(B<u>C</u>) ~~When considered in its *entirety,* the communication *can only be interpreted by a* Is susceptible of no *reasonable person as advocating the election or defeat* of one or more clearly identified *interpretation other than as an appeal to vote* for or against a specific* candidate~~s ~~because:~~

~~(i) The *electoral portion* of the communication is *unmistakable, unambiguous, and suggestive of only one meaning;* and~~

~~(ii) *Reasonable minds* could not differ as to whether it *encourages actions* to elect or defeat one or more clearly identified candidates~~.

*Compare id.* § 3-8-1a.13 (2008) *with id.* § 3-8-1a.12 (2010) (emphasis added). West Virginia thus bases its express-advocacy definition on the appeal-to-vote test. *Compare id.* § 3-8-1a.12.B-C (2010) *with FEC v. Wisconsin Right to Life, Inc.,* 551 U.S. 449, 470 (2007) ("*WRTL II*") ("no reasonable interpretation other than as an appeal to vote for or against a specific candidate").

8

Under the independent-expenditure definition, which West Virginia did not change in 2010 except for the numbering, non-coordinated express advocacy – as West Virginia defines "express advocacy" – is an independent expenditure. *Compare id.* § 3-8-1a.16 (2008) *with id.* § 3-8-1a.15 (2010). Those doing independent expenditures must file independent-expenditure reports, *id.* § 3-8-2 (2010); *id.* § 3-8-5 (2008) (requirements of those "supporting" a political committee and requiring a "detailed itemized sworn statement"); *id.* § 3-8-5a (2007) (requirements for "financial statements"); *id.* § 3-8-5b (2007) (same); *id.* § 3-8-2b (2007), including reports speakers must file within:

> ● 24 hours when, *inter alia,* independent expenditures for statewide or legislative candidates exceed $1000 and the speech occurs less than 15 days and more than 12 hours before the election, and

> ● 48 hours when independent expenditures for any candidate exceed $10,000 and the speech occurs 15 or more days before the election.

*Id.* § 3-8-2.c, d. Those doing independent expenditures must also comply with attribution and disclaimer requirements, *id.* § 3-8-2.e, which apply to WVFL's speech under the 2008 law and continue to apply under the 2010 law. However, in 2010, West Virginia broadened its 2008 attribution and disclaimer requirements as follows:

> (ee) Any <u>communication paid for by an</u> independent expenditure must include a clear and conspicuous public notice ~~which~~ <u>that</u>:

>> (1) <u>Clearly states that the communication is not authorized by the candidate or the candidate's committee; and</u>

>> (2) <u>Clearly</u> identifies ~~the name of~~ the person ~~who paid for~~ <u>making</u> the expenditure ~~and states that the communication is~~

9

> ~~not authorized by the candidate or his or her committee~~: *Provided,* That if the communication appears on or is disseminated by broadcast, cable or satellite transmission, the statement required by this subsection must be both spoken clearly and appear in clearly readable writing at the end of the communication.

*Compare id.* § 3-8-2 (2008) *with id.* § 3-8-2 (2010) (emphasis in original).

The 2010 amendments do not remove Plaintiffs' reasonable fear that each example of WVFL's speech is express advocacy, is an independent expenditure, and that WVFL must comply with independent-expenditure reporting, attribution, and disclaimer requirements.

Furthermore, WVFL will modify its planned speech. It will delete the entire second bulleted paragraph from the Mass Mailing and Newspaper Ads. Moreover, WVFL's Radio Ad, Mass Mailing/Newspaper Ads, and Petition will not fully comply with the attribution and disclaimer requirements. Although WVFL will add the attribution "Paid for by West Virginians for Life" to its Radio Ad, it will not add a disclaimer saying that no candidate or candidate's committee authorized it. The Mass Mailing/Newspaper Ads and Petition similarly will have an attribution yet not a disclaimer – unlike the one previous Newspaper Ad, which had both.[25]

Nor does WVFL want West Virginia through its disclaimer requirements to regulate the content of WVFL's speech itself.[26]

---

[25] WVFL SUMM. J. DEC. ¶ 5.

[26] WVFL SUMM. J. DEC. ¶ 6.

WVFL SJ MOTION 2

In addition, speech that WVFL reasonably fears is an independent expenditure or an electioneering communication, and which occurs less than 15 days but more than 12 hours before the election, will cost more than $1000. *See* W. Va. Code § 3-8-2.c (2010); *id.*§ 3-8-2b.a (2008).   Meanwhile, speech that WVFL reasonably fears is independent expenditures, and which occurs more than 15 days before the election, will cost more than $10,000, *see id.* § 3-8-2.d, and speech that WVFL reasonably fears is electioneering communications will cost more than $5000 in a calendar year. *Id.*§ 3-8-2b.a.  The 24 and 48 hour reporting requirements take up precious resources.  WVFL has limited staff.  Having to devote time to preparing and filing these reports is a severe burden on WVFL's resources, including its time to devote to its mission in critical weeks of the year.[27]

Therefore, Plaintiffs WVFL and Lawhorn seek a declaratory judgment that the express-advocacy definition, W. Va. Code § 3-8-1a.12, the independent-expenditure definition, *id.* § 3-8-1a.15, the independent-expenditure reporting requirements, *id.* §§ 3-8-2, 3-8-5, 3-8-5a, 3-8-5b, 3-8-2b, and the disclaimer requirements, *id.* § 3-8-2.e, and the corresponding sections in pre-2010 law, are unconstitutional as applied to WVFL's speech and facially.  WVFL and Lawhorn further ask that the Court permanently enjoin their enforcement.[28]

---

[27] WVFL Summ. J. Dec. ¶ 7.

[28] Doc. 128 ¶ 236-37.

WVFL SJ Motion 2

This will allow WVFL to do its speech, and materially similar speech in the future, without fear that it is express advocacy or independent expenditures, without having to comply with independent-expenditure reporting or disclaimer requirements, and without fear of enforcement or prosecution. It will also allow Lawhorn to receive communications and remove the fear of enforcement or prosecution for having distributed the Petition and Newspaper Ads without complying with independent-expenditure reporting, attribution, and disclaimer requirements.

WVFL's fear of enforcement or prosecution for the 2008 distribution of the Petition remains, despite the 2010 amendments, in part[29] because West Virginia has not repealed all the troublesome language from what was in the express-advocacy definition in 2008. *See id.* § 3-8-1a.12.B (2010).[30]

### 3.   Regulation of Electioneering Communications

Third, WVFL and Lawhorn reasonably fear WVFL's Radio Ad and Mass Mailing/Newspaper Ads are electioneering communications and that WVFL must

---

[29] *Cf.* Doc. 197 at 17-20 (discussing West Virginia's savings clause).

[30] West Virginia has also added *new* troublesome language, *see* W. VA. CODE § 3-8-1a.12.C (2010), yet Plaintiffs do not contend they fear Defendants will enforce the new language retroactively to the previous circulation of the Petition or the previous Newspaper Ads. They do fear, however, that Defendants will enforce it prospectively to WVFL's materially similar future speech.

comply with electioneering-communication reporting, attribution, and disclaimer requirements.[31]

In 2010, West Virginia amended its 2008 electioneering-communication definition as follows:[32]

> "Electioneering communication" means any paid communication made by broadcast, cable or satellite signal, ~~mass mailing, telephone bank, billboard advertising,~~ *or published in any newspaper, magazine or other periodical* that:
>
> > (i) Refers to a clearly identified candidate for Governor, Secretary of State, Attorney General, Treasurer, Auditor, Commissioner of Agriculture, Supreme Court of Appeals or the Legislature;
> >
> > (ii) Is publicly disseminated within:
> >
> > > (I) Thirty days before a primary election at which the nomination for office sought by the candidate is to be determined; or
> > >
> > > (II) Sixty days before a general or special election at which the office sought by the candidate is to be filled [("30-60 Day Windows")]; and
> >
> > (iii) Is targeted to the relevant electorate: *Provided,* That for purposes of the general election of two thousand eight the amendments to this article shall be effective ~~the first day of~~ October _1_, ~~two thousand eight~~ _2008_.

*Compare id.* § 3-8-1a.12.A (2008) *with id.* § 3-8-1a.11.A (2010) (first emphasis added).[33]

---

[31] Doc. 128 ¶ 68; WVFL SUMM. J. DEC. ¶¶ 5-7.

[32] The 2008 and 2010 versions each has exceptions that do not apply here.

"Targeted to the relevant electorate" means a communication which refers to a clearly identified candidate for statewide office or the Legislature and which can be received by ~~ten~~ one hundred forty thousand or more individuals in the state in the case of a candidacy for statewide office, eight thousand two hundred twenty or more individuals in the district in the case of a candidacy for the State Senate and ~~five hundred~~ two thousand four hundred ten or more individuals in the district in the case of a candidacy for the ~~Legislature~~ House of Delegates.

*Compare id.* § 3-8-1a.26 (2008) *with id.* § 3-8-1a.24 (2010).

Those doing electioneering communications must file electioneering-communications reports. *See id.* § 3-8-2b.b-g (requirements for persons); *id.* § 3-8-1a.20 (defining "person"); *id.* § 3-8-2b.a.1 (requiring reporting when spending exceeds $5000 in a calendar year); *id.* § 3-8-2b.a.2 (requiring reporting when spending from the 15th day before until 12 hours before an election exceeds $1000); *id.* § 3-8-2.f (requiring recordkeeping when spending for electioneering communications exceeds $5000 in a calendar year and referring to "disclosure" under Section § 3-8-2.a)); *id.* § 3-8-2.a (recordkeeping and reporting requirements for "all persons supporting, aiding, or opposing the nomination, election or defeat of any candidate"); *id.* § 3-8-5 (requirements of those "supporting" a political committee and requiring a "detailed itemized sworn statement"); *id.* § 3-8-5b (requirements for "financial statements"), including reports speakers must file within:

---

[33] This law *is* effective retroactively, *see* W. VA. CODE § 3-8-1a.11.A.iii (2010), so Plaintiffs fear its retroactive enforcement.

14

- 24 hours when a person has spent more than $5000 on "electioneering communications" in a calendar year, and

- 24 hours when a person has spent more than $1000 on "electioneering communications" less than 15 days and more than 12 hours before the election.

*Id.* § 3-8-2b.a.  Those doing electioneering communications must also comply with attribution and disclaimer requirements:

> (e) In each electioneering communication, a statement shall appear or be presented in a clear and conspicuous manner that:
>
> > (1) Clearly indicates that the electioneering communication is not authorized by the candidate or the candidate's committee; and
> >
> > (2) Clearly identifies the person making the expenditure for the electioneering communication: *Provided,* That if the electioneering communication appears on or is disseminated by broadcast, cable or satellite transmission, the statement required by this subsection must be both spoken clearly and appear in clearly readable writing at the end of the communication.

*Id.* § 3-8-2b (emphasis in original).

Although the Mass Mailing is no longer an electioneering communication, *see id.* § 3-8-1a.11.A, the challenge is not moot.[34]  Moreover, the 2010 amendments do not remove Plaintiffs' reasonable fear that WVFL's Radio Ad and Newspaper Ads are electioneering communications.[35]

---

[34] Doc. 206 at 3 (denying Defendants' motion to dismiss as moot).

[35] Even under West Virginia law as amended in 2010, WVFL's Radio Ad and Newspaper Ads are still targeted to the relevant electorate, because they have "a clearly identified candidate for statewide office" and "can be received by" 140,000 or

15

In addition, speech that WVFL reasonably fears is an electioneering communication, and which occurs less than 15 days but more than 12 hours before the election, will cost more than $1000.  *See* W. VA. CODE § 3-8-2b.a.  Meanwhile, speech that WVFL reasonably fears is electioneering communications will cost more than $5000 in a calendar year.  *Id.*  The 24 hour reporting requirements take up precious resources.  WVFL has limited staff.  Having to devote time to preparing and filing these reports is a severe burden on WVFL's resources, including its time to devote to its mission in critical weeks of the year.[36]

Therefore, Plaintiffs WVFL and Lawhorn seek a declaratory judgment that the electioneering-communication definition, W. VA. CODE § 3-8-1a.11, the electioneering-communication reporting requirements, *see id.* §§ 3-8-2b.b-g, 3-8-2b.a.1, 3-8-2b.a.2, 3-8-2.f, 3-8-2.a, 3-8-5, 3-8-5b, and the disclaimer requirements, *id.* § 3-8-2b.e, and the corresponding sections in pre-2010 law, are unconstitutional as applied to WVFL's speech and facially.  WVFL and Lawhorn further ask that the Court permanently enjoin their enforcement.[37]

This will allow WVFL to do its speech, and materially similar speech in the future, without fear that it is electioneering communications, without having to

---

more individuals in West Virginia.  *See* W. VA. CODE §§ 3-8-1a.11.A (2010); *id.* § 3-8-1a.24; WVFL SUMM. J. DEC. ¶ 8.

[36] WVFL SUMM. J. DEC. ¶ 7.

[37] Doc. 128 ¶ 240-41 (citing all but Section 3-8-2.f, which West Virginia added in 2010).

comply with electioneering-communication reporting or disclaimer requirements, and without fear of enforcement or prosecution.  It will also allow Lawhorn to receive communications and remove the fear of enforcement or prosecution for having distributed the Newspaper Ads without complying with electioneering-communication reporting, attribution, and disclaimer requirements.

Although Plaintiffs' previous submissions did not mention 24/48 hour reporting requirements or disclaimer requirements, they did challenge the sections containing these requirements.[38]  It is proper, *see, e.g., Citizens United v. FEC,* 558 U.S. ____, ____, 130 S.Ct. 876, 893 (2010) ("once a federal claim is properly presented, a party can make any argument in support of that claim" (citation and brackets omitted)), and necessary to challenge them now, because intervening Supreme Court case law has done away with[39] and rendered unconstitutional[40] the appeal-to-vote test, which was an important shield against regulation of speech. *See, e.g., North Carolina Right to Life v. Leake,* 525 F.3d 274, 281-82 (4th Cir. 2008) ("*NCRL III*").[41]  With that shield gone, WVFL relies on other shields against

---

[38] *E.g.,* Doc. 128 ¶¶ 236 (citing W. VA. CODE §§ 3-8-2, 3-8-2b); 240 (citing *id.* § 3-8-2b).

[39] PLS.' SECOND SUMM. J. BR. Part II.G.2.

[40] PLS.' SECOND SUMM. J. BR. Part II.D.3.

[41] Other aspects of *Citizens United* support *NCRL III.  See, e.g.,* PLS.' SUMM. J. BR. Parts II.F.1-2, II.G.2.

unconstitutional regulation of speech, including challenges to 24/48 hour reporting requirements and disclaimer requirements.

### 4.    Independent Expenditure Ban

Fourth, WVFL and Lawhorn reasonably fear WVFL's Petition and Newspaper Ads are subject to West Virginia's independent-expenditure ban,[42] notwithstanding its repeal in 2010.[43]

Therefore, Plaintiffs WVFL and Lawhorn seek a declaratory judgment that the independent-expenditure ban, W. VA. CODE §§ 3-8-8.a (2008), 3-8-8.b.1.D (2008); W. VA. CODE. R. § 146-1-3, is unconstitutional *as applied* to WVFL's speech. WVFL and Lawhorn further ask that the Court permanently enjoin its enforcement.[44]

This will relieve WVFL of the fear of enforcement of or prosecution under the ban.

---

[42] Doc. 128 ¶¶ 47-48.

[43] Doc. 197 at 17-20; *see also* Doc. 206 at 3 (denying Defendants' motion to dismiss as moot).

[44] Doc. 128 ¶¶ 234-35.  Given then-existing law on *MCFL* corporations, Plaintiffs sought only an as-applied holding here, *id., see* PLS.' SECOND SUMM. J. BR. Part II.H.3, so they do not seek a facial holding now. *Cf. Citizens United,* 130 S.Ct. at 893 ("once a federal claim is properly presented, a party can make any argument in support of that claim" (citation and brackets omitted)).

### D.     Future Speech

In materially similar situations in the future, WVFL intends to do speech materially similar to all of its planned and previous speech[45] – its Radio Ad, Petition, Mass Mailing, and Newspaper Ads – such that West Virginia law will apply to WVFL as it does now.   WVFL's future speech, for example, will mention public figures who are candidates and will occur not only during future electioneering-communications periods, when public interest is at a peak, but also at other times.   There is a strong likelihood that such similar situations will recur, given that WVFL has engaged in similar activity in the past and that such activity is common and regularly recurring for it.[46]

In addition, Lawhorn wishes to receive future speech materially similar to the speech at issue in this action.[47]

Thus, when this Court's preliminary-injunction order protected the Petition, WVFL circulated its Petition again.   Although the order also protected the Mass Mailing, WVFL found itself with insufficient time to do the Mass Mailing, so WVFL instead did Newspaper Ads materially similar to the Mass Mailing.   In this sense, WVFL, based on the order, has already done speech more than materially similar to the Mass Mailing – it was nearly identical.   At the same time, WVFL did not do the

---

[45] WVFL SUMM. J. DEC. ¶ 9.

[46] VC ¶ 76.

[47] VC ¶ 76.

Radio Ad, because it erred on the side of caution and concluded the order did not protect it.[48]

WVFL will plan its future speech as the need arises, keeping in mind that it often cannot know well in advance of when it wants to speak, *see WRTL II,* 551 U.S. at 462-63, and that "timing is of the essence in politics.  It is almost impossible to predict the political future; and when an event occurs, it is often necessary to have one's voice heard promptly, if it is to be considered at all."  *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 163 (1969) (Harlan, J., concurring).

Despite *Citizens United,* WVFL finds itself in the position of having to consult campaign-finance lawyers or seek declaratory rulings "before discussing the most salient political issues of our day."  130 S.Ct. at 889.

## II.    Conclusion

For the reasons stated in the accompanying brief, Plaintiffs WVFL and Lawhorn request that the Court grant their summary-judgment motion.

● Plaintiffs WVFL and Lawhorn seek a declaratory judgment that the PAC, unaffiliated-PAC, and political-committee definitions, W. VA. CODE § 3-8-1a.19, 20, 26 (2010), and the corresponding sections in pre-2010 law, are unconstitutional as applied to WVFL's speech and facially.  WVFL and Lawhorn further ask that the Court permanently enjoin their enforcement.[49]

---

[48]  WVFL SUMM. J. DEC. ¶¶ 2-4; PLS.' SUMM. J. BR. Part II.G.5 (third bullet).

[49] Doc. 128 ¶¶ 238-39; *supra* Part I.C.1.

• Plaintiffs WVFL and Lawhorn seek a declaratory judgment that the express-advocacy definition, W. VA. CODE § 3-8-1a.12, the independent-expenditure definition, *id.* § 3-8-1a.15, the independent-expenditure reporting requirements, *id.* §§ 3-8-2, 3-8-5, 3-8-5a, 3-8-5b, 3-8-2b, and the disclaimer requirements, *id.* § 3-8-2.e, and the corresponding sections in pre-2010 law, are unconstitutional as applied to WVFL's speech and facially.   WVFL and Lawhorn further ask that the Court permanently enjoin their enforcement.[50]

• Plaintiffs WVFL and Lawhorn seek a declaratory judgment that the electioneering-communication definition, W. VA. CODE § 3-8-1a.11, the electioneering-communication reporting requirements, *see id.* §§ 3-8-2b.b-g, 3-8-2b.a.1, 3-8-2b.a.2, 3-8-2.f, 3-8-2.a, 3-8-5, 3-8-5b, and the disclaimer requirements, *id.* § 3-8-2b.e, and the corresponding sections in pre-2010 law, are unconstitutional as applied to WVFL's speech and facially.   WVFL and Lawhorn further ask that the Court permanently enjoin their enforcement.[51]

• Plaintiffs WVFL and Lawhorn seek a declaratory judgment that the independent-expenditure ban, W. VA. CODE §§ 3-8-8.a (2008), 3-8-8.b.1.D (2008);

---

[50] Doc. 128 ¶¶ 236-37; *supra* Part I.C.2.

[51] Doc. 128 ¶¶ 240-41 (citing all but Section 3-8-2.f, which West Virginia added in 2010); *supra* Part I.C.3.

WVFL SJ MOTION 2

W. VA. CODE. R. § 146-1-3, is unconstitutional *as applied* to WVFL's speech.  WVFL

and Lawhorn further ask that the Court permanently enjoin its enforcement.[52]

Plaintiffs request a hearing on this motion, estimate it could take one hour,

and would be available for as long as the Court would like Plaintiffs to be available.

Respectfully submitted,


/s/ Shirley J. Stanton                          /s/ Randy Elf
Shirley J. Stanton                              James Bopp, Jr., Ind. No. 2838-84
Attorney at Law                                 Randy Elf, New York No. 2863553
STANTON LAW FIRM                                Kaylan Lytle Phillips, Okla. No. 22219
Post Office Box 968                             Joseph A. Vanderhulst, Ind. No. 28106-20
Fairmont, W. Va.  26555                         JAMES MADISON CENTER FOR FREE SPEECH
Telephone (304) 367-0219                        1 South Sixth Street
*Local Counsel for Plaintiffs*                  Terre Haute, Ind.  47807
                                                Telephone (812) 232-2434
                                                Facsimile  (812) 235-3685
                                                *Lead Counsel for Plaintiffs*

September 14, 2010

---

[52] Doc 128 ¶¶ 234-35; *supra* Part I.C.4

## Certificate of Service

I certify that on September 14, 2010, I electronically filed the foregoing **Plaintiffs WVFL and Lawhorn's Second Summary Judgment Motion** with the clerk of court using the CM/ECF system, which will notify the following CM/ECF participants:

Thomas W. Smith
Silas B. Taylor
MANAGING DEPUTY
ATTORNEYS GENERAL
State Capitol Complex
Building 1, Room E-26
Charleston, W. Va.  25305

Anthony Majestro
J.C. Powell
POWELL & MAJESTRO, P.L.L.C.
405 Capitol Street, Suite P-1200
Charleston, W. Va.  25301

Jan Witold Baran
Thomas Kirby
WILEY REIN
1776 K Street, N. W.
Washington, D. C.  20006

William Porth
ROBINSON & MCELWEE
Post Office Box 1791
Charleston, W. Va. 25326

Joseph Jenkins
Judith Thomas
Nicholas Preservati
PRESERVATI LAW OFFICES
Post Office Box 1431
Charleston, W. Va.  25325

Patrick Maroney
MARONEY, WILLIAMS, WEAVER &
PANCAKE
608 Virginia Street, East
Charleston, W. Va.  25301

Stephen Pershing
CENTER FOR CONSTITUTIONAL
LITIGATION
Suite 520
777 6th Street, N. W.
Washington, D. C. 20001

Kathy Brown
Teresa Toriseva
WEXLER, TORISEVA & WALLACE
1446 National Road
Wheeling, W. Va.  26003

I certify that I have mailed the document by United States Postal Service to the following non-CM/ECF participant:

Robbin Stewart
Post Office Box 29164
Cumberland, Ind.  46229

/s/ Randy Elf
Randy Elf