## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT BLUEFIELD

CENTER FOR INDIVIDUAL
FREEDOM, INC.,

       Plaintiff,

v.                                        **Civil Action No.:  1:08-cv-00190**

NATALIE E. TENNANT and
TIMOTHY D. BOGGESS,

       Defendants,

v.

WEST VIRGINIANS FOR LIFE,
INC., and ZANE LAWHORN,

       Plaintiffs,

v.                                        **Civil Action No.: 1:08-cv-01133**

NATALIE E. TENNANT, et al.

GARY A.  COLLIAS, WILLIAM N.
RENZELLI, ROBERT RUPP and
CINDY SMITH, in their official
capacities as members of the West
Virginia State Election Commission,

       Defendants.

### DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFFS'
### SECOND (OR RENEWED) MOTIONS FOR SUMMARY JUDGMENT

                  **DARRELL V. McGRAW, JR.**
                  **ATTORNEY GENERAL**

                  **SILAS B. TAYLOR**
                  **SENIOR DEPUTY ATTORNEY GENERAL**
                  **Office of the Attorney General**
                  **State Capitol Complex**
                  **Building 1, Room E-26**
                  **Charleston, West Virginia 25305-0220**
                  **Telephone:   (304) 558-2021**
                  **Fax:         (304) 558-0140**
                  **E-mail:     silastaylor@yahoo.com**

## <u>TABLE OF CONTENTS</u>

I.   <u>RESPONSE TO CFIF'S CLAIMS</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.   The Statutory Definition of "Expressly Advocate" Is
          Sufficiently Clear to Withstand Due Process Vagueness Scrutiny . . . . . . . . . . . 2

          1.   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
          2.   "No Other Reasonable Meaning" is clear and objective . . . . . . . . . . . . 4
          3.   West Virginia may require reporting of independent
              expenditures that are not "Electioneering Communications." . . . . . . . . 7

     B.   West Virginia's Electioneering Provisions Are Valid . . . . . . . . . . . . . . . . . . . . 12

     C.   CFIF Has No Basis to Challenge the Exemptions to
          "Electioneering Communications." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     D.   The Reporting Requirements Are Not Vague . . . . . . . . . . . . . . . . . . . . . . . . . . 15

          1.   "Persons sharing or exercising control" means
              corporate officers and directors and their like. . . . . . . . . . . . . . . . . . . 15
          2.   CFIF is not subject to West Virginia Code § 3-8-5. . . . . . . . . . . . . . . 16
          3.   The State's requirement that donors be
              disclosed is not vague . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

II.   <u>RESPONSE TO WVFL'S CLAIMS</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

     A.   West Virginia's Definitions of Political Committee,
          PAC, and Unaffiliated-PAC Are Narrow and Clear . . . . . . . . . . . . . . . . . . . . . 19

     B.   West Virginia May Validly Impose Disclosure, Disclaimer
          and Reporting Requirements on Independent Expenditures . . . . . . . . . . . . . . . 21

     C.   Electioneering Communications. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

III.  <u>NEITHER CFIF NOR WVFL NEED ANY FURTHER RELIEF AS</u>
     <u>TO PAST SPEECH</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

IV.  <u>CONCLUSION</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD**

**CENTER FOR INDIVIDUAL
FREEDOM, INC.,**

       **Plaintiff,**

**v.**                                             **Civil Action No.:  1:08-cv-00190**

**NATALIE E. TENNANT and
TIMOTHY D. BOGGESS,**

       **Defendants,**

**v.**

**WEST VIRGINIANS FOR LIFE,
INC., and ZANE LAWHORN,**

       **Plaintiffs,**

**v.**                                             **Civil Action No.: 1:08-cv-01133**

**NATALIE E. TENNANT, et al.**

**GARY A.  COLLIAS, WILLIAM N.
RENZELLI, ROBERT RUPP and
CINDY SMITH, in their official
capacities as members of the West
Virginia State Election Commission,**

       **Defendants.**

_____

**DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFFS'
SECOND (OR RENEWED) MOTIONS FOR SUMMARY JUDGMENT**
_____

This Memorandum is filed jointly on behalf of all State Defendants in response to the

"Renewed Motion for Summary Judgment" filed by the Center for Individual Freedom, Inc.

("CFIF") (Doc. 210), and the "Second Motion for Summary Judgment" filed West Virginians for Life, Inc. ("WVFL") (Doc. 209).

## I.

## RESPONSE TO CFIF'S CLAIMS

A response to CFIF's factual assertions is contained in Defendants' Memorandum in Response to Plaintiffs' Motions for Summary Judgment (Doc. 176) at 2-5, which discussion is incorporated by reference.

**A.    The Statutory Definition of "Expressly Advocate" Is Sufficiently Clear to Withstand Due Process Vagueness Scrutiny.**

**1.    Introduction.**

West Virginia law requires that persons making "independent expenditures"[1] of more than $1000 in a calendar year disclose those expenditures as well as the identity of any individuals making contributions in excess of $250.00 to fund such expenditures.  W. Va. Code § 3-8-2(b).[2]

---

[1]West Virginia Code § 3-8-1a(16) provides, in pertinent part:

> (16) "Independent expenditure" means an expenditure by a person:
>
> (A) Expressly advocating the election or defeat of a clearly identified candidate; and
>
> (B) That is not made in concert or cooperation with or at the request or suggestion of such candidate, his or her agents, the candidate's authorized political committee or a political party committee or its agents.

[2]Likewise, state or local candidates or their campaign committees must also disclose the identity of persons making contributions in excess of $250.00.  W. Va. Code § 3-8-5.  Federal law imposes similar requirements with respect to contributions to federal candidates.  2 U.S.C. § 434.

2

A violation of this requirement is not punishable unless it is "willful," in which case it may be prosecuted as a misdemeanor.  W. Va. Code § 3-8-2(g).

West Virginia has chosen not to require reporting of "independent expenditures" unless they "expressly advocate the election or defeat of a clearly identified candidate," and consequently the above disclosure requirements apply only to organizations that engage in express advocacy.[3]  CFIF maintains that these requirements are unenforceable because of allegedly vague terminology in subsections (B) and (C) of the recently-amended definition of "expressly advocating."[4]  (CFIF's Memorandum at 10-13.)

CFIF's Complaint and Supplemental Complaint have never challenged subsection (C), which did not exist until the passage of House Bill 4647 (H.B. 4647) in March of 2010, and CFIF's challenge to the pre-existing version of subsection (C) – then subsection (B) –  is moot, as argued

---

[3]*Citizens United v. Federal Election Com'n,*, 558 U.S. ----, 130 S.Ct. 876, 915 (2010) clearly allowed West Virginia to go further, as it roundly rejected Citizen United's position that disclosure and reporting requirements could be applied only to speech that qualified as the "functional equivalent of express advocacy."

[4]Subsection 12 of West Virginia Code § 3-8-1a ("Definitions") provides:

"Expressly advocating" means any communication that:

(A) Uses phrases such as "vote for the Governor," "re-elect your Senator," "support the Democratic nominee for Supreme Court," "cast your ballot for the Republican challenger for House of Delegates," "Smith for House," "Bob Smith in '04," "vote Pro-Life" or "vote Pro-Choice" accompanied by a listing of clearly identified candidates described as Pro-Life or Pro-Choice, "vote against Old Hickory," "defeat" accompanied by a picture of one or more candidates, "reject the incumbent";

(B) Communications of campaign slogans or individual words, that can have no other reasonable meaning than to urge the election or defeat of one or more clearly identified candidates, such as posters, bumper stickers, advertisements, etc. , which say "Smith's the One," "Jones '06," "Baker", etc; or

(C)  Is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate.

3

in the Memorandum in Support of Defendant's Motion to Dismiss as Moot (Doc. 194) at 11 and 13-14, which argument is hereby incorporated by reference.  However, CFIF's vagueness argument is nonetheless hereafter addressed on the merits.

Even when applied to statutes burdening political speech, the requirement that a criminal statute not be vague emanates from the Due Process Clause, and is concerned with notions of fair notice and fair (non-arbitrary) enforcement.

> A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement.

*Hill v. Colorado,* 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000) (citing *Chicago v. Morales,* 527 U.S. 41, 56-57, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999).  Consequently, this Court must be mindful of the heightened burden imposed upon State prosecutors by the statutory element of "willfulness" previously described.  This Court should also be mindful that the responsibility of securing fair and orderly elections lies with the State, and demands substantial regulation.  "As a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Storer v. Brown,* 415 U.S. 724, 730 (1974).

### 2.    "No Other Reasonable Meaning" is clear and objective.

CFIF's due process argument is premised on the false notion that the "magic words" test of *Buckley v. Valeo* remains the exclusive test for vagueness of any regulation of independent campaign expenditures that are not "electioneering communications," despite the Supreme Court's subsequent

4

admonitions that the "magic words" test is impractical and more restrictive than necessary to satisfy First Amendment concerns.[5]

First, CFIF complains that the phrase "reasonable meaning" within subsection (B) is subjective, because Merriam-Webster's Collegiate Dictionary defines "meaning" as "the thing one *intends* to convey." (CFIF Memorandum at 10, emphasis supplied.) Since the speaker's "intent" is inherently subjective, argues CFIF, so is the speaker's "meaning." (*Id*.) As appealing as that argument may sound, it is based on a false premise because CFIF has omitted half of the dictionary definition it quotes. Said Dictionary actually defines "meaning (noun)" as follows:

a : the thing one intends to convey especially by language : purport
b : the thing that is conveyed especially by language : import

(Merriam-Webster online dictionary.) Only by omitting the second portion of this definition can CFIF argue that "meaning" is inherently subjective, said second portion being clearly *objective*.

Whether the Legislature's use of the phrase "reasonable meaning" was intended to invoke the subjective or objective use of that term is not a problem of vagueness so much as ambiguity (the difference being that an "ambiguous" word has *alternative* usages, each of which may or may not

---

[5]For instance, in *McConnell v. Federal Election Commission*, 540 U.S. 93 (2003), the Supreme Court wrote:

> Indeed, the unmistakable lesson from the record in this litigation . . . is that *Buckley's* magic-words requirement is functionally meaningless. Not only can advertisers easily evade the line by eschewing the use of magic words, but they would seldom choose to use such words even if permitted. And although the resulting advertisements do not urge the viewer to vote for or against a candidate in so many words, they are no less clearly intended to influence the election. *Buckley's* express advocacy line, in short, has not aided the legislative effort to combat real or apparent corruption . . ..

*Id*. at 193 (citations and footnotes omitted).

be vague).  But ambiguity problems are easily resolved via the doctrine that an ambiguous term in a criminal statute is always strictly construed against the State regardless of what the Legislature may have intended:

> The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them. [Citations omitted]. This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed.

*U.S. v. Santos,* 553 U.S. 507, 514 (2008).[6]

In its objective usage, the term "reasonable meaning" is not "vague."  Rather, it is synonymous with "reasonable interpretation,"[7] the phrase used by Chief Justice Roberts in *WRTL II*[8] to describe the "functional equivalent" of express advocacy.  The Court ultimately found that the appropriate test for vagueness was an "objective" one – whether the ad is "susceptible of no *reasonable interpretation* other than as an appeal to vote for or against a specific candidate."[9]  This

---

[6]West Virginia jurisprudence incorporates this principle:  "In construing an ambiguous criminal statute, the rule of lenity applies which requires that penal statutes must be strictly construed against the State and in favor of the defendant."  *State ex rel. Morgan v. Trent,* 195 W.Va. 257, 259, 465 S.E.2d 257, 259 (1995).

[7]"Interpret" is defined by Merriam-Webster as "to explain or tell the meaning of."  (Merriam-Webster online dictionary.)

[8]*Federal Election Commission v. Wisconsin Right to Life, Inc.*, 551 U.S. 449 (2007).

[9]The relevant passage is quoted in full below:

> To safeguard this liberty [to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment], the proper standard for an as-applied challenge to BCRA § 203 must be objective, focusing on the substance of the communication rather than amorphous considerations of intent and effect. See *Buckley, supra,* at 43-44.  It must entail minimal if any discovery, to allow parties to resolve disputes quickly without chilling speech through the threat of burdensome litigation. *See Virginia v. Hicks,* 539 U.S. 113, 119, (2003). And it
>
> (continued...)

6

holding – that "reasonable interpretation" was appropriately objective – was reaffirmed in *Citizens United v. Federal Election Com'n,,* 558 U.S. ----, 130 S.Ct. 876, 889 -890 (2010), as follows:

> As explained by THE CHIEF JUSTICE's controlling opinion in *WRTL*, *the functional-equivalent test is objective*: "a court should find that [a communication] is the functional equivalent of express advocacy only if [it] is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate."

(Emphasis supplied.)   Consequently, contrary to CFIF's contention, "reasonable meaning" is objective rather than subjective and does *not* imply the "amorphous considerations of intent and effect" condemned in *Buckley*.[10]

### 3.    West Virginia may require reporting of independent expenditures that are not "Electioneering Communications."

CFIF's Memorandum argues that statutes regulating ads containing messages that are the "functional equivalent" of express advocacy, such as subsection C of West Virginia's definition of

---

[9](...continued)

> must eschew "the open-ended rough-and-tumble of factors," which "invit[es] complex argument in a trial court and a virtually inevitable appeal." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 547, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). In short, it must give the benefit of any doubt to protecting rather than stifling speech. See *New York Times Co. v. Sullivan, supra,* at 269-270.

> In light of these considerations, a court should find that an ad is the functional equivalent of express advocacy only if the ad is susceptible of no *reasonable interpretation* other than as an appeal to vote for or against a specific candidate.

*WRTL*, 551 U.S. at 469-470 (emphasis supplied).

[10]Aside from the "rule of lenity," it is well-settled that a court, including a West Virginia court, is obligated to construe a statute so as to avoid constitutional problems if it is fairly possible to do so. *Boumediene v. Bush,* __ U.S. ___, 128 S. Ct. 2229 (2008). When a statute is capable of being reasonably construed in more than one way, the court should read the statute to avoid constitutional conflicts. *Gonzales v. Carhart*, 550 U.S. 124 (2007); *Clark v. Martinez*, 543 U.S. 371 (2005); Syl. Pt. 3, *State v. Mullens*, 650 S.E.2d 160 (W. Va. 2007); *Morris v. Crown Equip. Corp.*, 633 S.E.2d 315 (W. Va. 2006); Syl. Pt. 1, *Perrelli v. Board of Educ.*, 387 S.E.2d 315 (W. Va. 1989); Syl. Pt. 3, *Slack v. Jacob*, 8 W. Va. 612 (1875). The logical course to take here would be to resolve any ambiguity in the usage of "reasonable meaning" so as to uphold its constitutionality.

expressly advocating,[11] must be considered vague unless the statute is limited to communications that fit the definition of "electioneering communications" in the Bipartisan Campaign Reform Act (BCRA).  (CFIF's Memorandum at 11-13.)  Nothing in *Buckley, McConnel*, *WRTL II*, or any other Supreme Court decision so holds, nor does such a conclusion logically follow from the due process notions of fairness that underlie the "void for vagueness" doctrine.

In so arguing, CFIF relies upon *North Carolina Right to Life v. Leake*, 525 F.3d 274, 283 (4th Cir. 2008) (CFIF's Memorandum at 11), a Fourth Circuit opinion that, in relevant portion, has been functionally overruled by *Citizens United*.   In *Leake*, an anti-abortion political action committee brought a § 1983 First Amendment challenge against provisions of a North Carolina campaign finance law that permitted examination of "contextual factors" in determining whether a given communication is in support of a specific candidate."[12]  The Court of Appeals noted that, to date, the United States Supreme Court had recognized two categories of constitutionally valid campaign restrictions: "magic words" and their "functional equivalent."  525 F.3d at 281-282.

However, the majority in *Leake* went even further and ruled:

> [T]o be considered the "functional equivalent of express advocacy," a communication must meet two separate requirements. First, *the communication must qualify as an "electioneering communication,"* defined by . . . BCRA [citations omitted] as a "broadcast, cable, or satellite communication" that refers to a "clearly identified candidate" within sixty days of a general election or thirty days of a primary election.  (Emphasis added.)

*Id*. at 282.

––––––––––––––––––––

[11]As earlier noted, CFIF's challenge to subsection (C) is not contained in its Amended Complaint and its challenge to the pre-existing version is moot.

[12]No such contextual factors are invoked in West Virginia's statute.

As Judge Michael noted in his dissenting opinion, the majority in *Leake* "seriously misconstrues Supreme Court precedent with respect to the regulation of express . . . and issue advocacy." *Id.* at 313.  The majority's only support for its adoption of the "electioneering communication" component of its new definition of "functional equivalent" was a mere *fragment* of a footnote from *WRTL*, taken out of context.  The footnote was in response to concerns that the objective reasonableness test adopted by the Court for an as-applied challenge to § 203 of the BCRA, was impermissibly vague.[13]  As Judge Michael noted in his dissenting opinion:

[13]

> Justice SCALIA thinks our test impermissibly vague. See *post,* at 2680 - 2681 (opinion concurring in part and concurring in judgment). As should be evident, we agree with Justice SCALIA on the imperative for clarity in this area; that is why our test affords protection unless an ad is susceptible of *no reasonable interpretation* other than as an appeal to vote for or against a specific candidate. It is why we emphasize that (1) there can be no free-ranging intent-and-effect test; (2) there generally should be no discovery or inquiry into the sort of "contextual" factors highlighted by the FEC and intervenors; (3) discussion of issues cannot be banned merely because the issues might be relevant to an election; and (4) in a debatable case, the tie is resolved in favor of protecting speech. And keep in mind *this test is only triggered if the speech meets the brightline requirements of BCRA § 203 in the first place.* Justice SCALIA's criticism of our test is all the more confusing because he accepts *WRTL*'s proposed three-prong test as "clear." *Post,* at 2683. We do not think our test any vaguer than *WRTL*'s, and it is more protective of political speech.

> Justice SCALIA also asserts that our test conflicts with *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) ( *per curiam* ). Post, at 2681 - 2683. The *Buckley* Court confronted a statute restricting "any expenditure ... relative to a clearly identified candidate." 424 U.S., at 42, 96 S.Ct. 612 (internal quotation marks omitted). To avoid vagueness concerns, this Court first narrowed the statute to cover only expenditures expressly "advocating the election or defeat of a candidate"-using the so-called "magic words" of express advocacy. *Ibid.* (internal quotation marks omitted). The Court then proceeded to strike down the newly narrowed statute under strict scrutiny on the ground that its reach was not broad enough. *Id.,* at 44, 96 S.Ct. 612. From this, Justice SCALIA concludes that "[i]f a permissible test short of the magic-words test existed, *Buckley* would surely have adopted it." *Post,* at 2682. We are not so sure. The question in *Buckley* was how a particular statutory provision could be construed to avoid vagueness concerns, not what the constitutional standard

(continued...)

9

Nowhere does *WRTL II* state that the specific requirements of BCRA § 203 are the only way that a statute could be sufficiently clear; nor does *WRTL II* even purport to adopt BCRA's requirements to avoid overbreadth. . . . The majority clearly errs by mandating the elements of BCRA § 203, which is simply an *example* of a clear and sufficiently tailored statute, as an essential part of any campaign regulation. (Emphasis in original.)

525 F.3d at 315-16.  In other words, footnote 7 in *WRTL* refers to § 203 of the BCRA only because that is the only provision scrutinized by the Court *in that case* – not because only "electioneering communications" can be the "functional equivalent of express advocacy."[14]

Importantly, *Citizens United* contains language that is directly at odds with *Leake*'s reasoning, impliedly overruling the majority opinion and clearing the way for this Court to reject *Leake* despite its not being expressly overruled.  Citizens United argued that the disclosure

---

[13](...continued)
for clarity was in the abstract, divorced from specific statutory language. *Buckley's* intermediate step of statutory construction on the way to its constitutional holding does not dictate a constitutional test. The *Buckley* Court's "express advocacy restriction was an endpoint of statutory interpretation, not a first principle of constitutional law." *McConnell,* 540 U.S., at 190, 124 S.Ct. 619. And despite Justice SCALIA's claim to the contrary, our citation of *Buckley* along with other decisions in rejecting an intent-and-effect test does not force us to adopt (or reject) *Buckley's* statutory construction as a constitutional test. (Emphasis added.)

127 S.Ct. at 2669 n.7.

[14]Judge Michael goes on to demonstrate at length in his dissenting opinion that the majority in *Leake* grossly misconstrued and misread the precedents relating to First Amendment issues with regard to restrictions on campaign contributions and expenditures.  No other court in the country, including the United States Supreme Court, has adopted the narrow definition of "functional equivalent of express advocacy" put forth by the majority in *Leake*.  In the interest of "clarity," the Court of Appeals sacrificed "a campaign finance law that is aimed at promoting transparency and openness in the electoral process" and opened the door for "organizations and individuals to conceal their identities, spend unlimited amounts on campaign advertising masked as discussion of issues, and 'hide themselves from the scrutiny of the voting public.'"  *McConnell v. Fed. Election Comm'n,* 540 U.S. 93, 197, 124 S. Ct. 619, 157 L. Ed. 2d 491 (2003) (internal quotation marks omitted)." 525 F.3d at 308, Michael, J., dissenting.

10

requirements of BCRA § 201 "must be confined to speech that is the functional equivalent of express advocacy" (130 S.Ct at 915), a position similar to that taken by the majority in *Leake*, the difference being that in *Leake*, the "functional equivalent of express advocacy" was held to be a test that incorporated and could be applied only to "electioneering communications."   (Otherwise, *Buckley*'s more restrictive "magic words" test would apply.)   The *Leake* majority thus adopted a more aggressive (more restrictive) position than sought by the plaintiff in *Citizens United*.   But the Supreme Court rejected Citizen United's position as *too* restrictive, holding that disclosure and reporting requirements could be applied to speech (such as issue-advocacy) that was *not* the "functional equivalent of express advocacy," thus rejecting as *too* restrictive a test that was *less* restrictive than the *Leake* holding.

> The Court has explained that disclosure is a less restrictive alternative to more comprehensive regulations of speech. See, *e.g., MCFL,* 479 U.S., at 262, 107 S.Ct. 616. In *Buckley,* the Court upheld a disclosure requirement for independent expenditures even though it invalidated a provision that imposed a ceiling on those expenditures. 424 U.S., at 75-76, 96 S.Ct. 612. In *McConnell,* three Justices who would have found § 441b to be unconstitutional nonetheless voted to uphold BCRA's disclosure and disclaimer requirements. 540 U.S., at 321, 124 S.Ct. 619 (opinion of KENNEDY, J., joined by Rehnquist, C.J., and SCALIA, J.). And the Court has upheld registration and disclosure requirements on lobbyists, even though Congress has no power to ban lobbying itself. *United States v. Harris,* 347 U.S. 612, 625, 74 S.Ct. 808, 98 L.Ed. 989 (1954) (Congress "has merely provided for a modicum of information from those who for hire attempt to influence legislation or who collect or spend funds for that purpose"). For these reasons, we reject Citizens United's contention that the disclosure requirements must be limited to speech that is the functional equivalent of express advocacy.

130 S.Ct. at 915.

Consequently, *Leake*'s proposition that only electioneering communications can be subjected to disclosure and reporting requirements has been proven false.

11

**B**.        **West Virginia's Electioneering Provisions Are Valid.**

CFIF argues that the definition of "electioneering communications" is invalid in its inclusion of communications made in newspapers and periodicals.  In *Citizens United*, the Supreme Court clearly suggested otherwise in its discussion of Citizens United's contention that BCRA § 441b should be invalidated as applied to movies shown through video-on-demand, arguing that the delivery system had a lower risk of distorting the political process than do television ads:

> While some means of communication may be less effective than others at influencing the public in different contexts, any effort by the Judiciary to decide which means of communications are to be preferred for the particular type of message and speaker would raise questions as to the courts' own lawful authority. Substantial questions would arise if courts were to begin saying what means of speech should be preferred or disfavored. And in all events, those differentiations might soon prove to be irrelevant or outdated by technologies that are in rapid flux. *See Turner Broadcasting System, Inc. v. FCC*, 512 U. S. 622, 639 (1994).

130 S.Ct. at 890-891.

To the extent that CFIF continues to challenge West Virginia's past regulation of non-broadcast media *other than* newspapers, its claims were mooted by the passage of H.B. (H.B. 4647).[15]  As to CFIF's argument that West Virginia has failed to empirically justify the inclusion of newspapers and periodicals in its definition of electioneering communications, Defendants rely on their discussions (and associated exhibits) in previous memoranda.[16]  Further, appended hereto as Exhibit A are two pages of the same spreadsheet of election expenditures prepared by Nicholas Casey and already submitted herein (Doc. 176-1), but with a "total" column under the local legislative races clarifying that expenditures for newspaper and periodical political ads in such local

---

[15]*See* Doc. 194 at 7-9, incorporated herein by reference.

[16]Doc.'s. 176 at 16-22; 194 at 7-8; 199 at 11-12, incorporated herein by reference.

races is about 50% of expenditures for broadcast media, thus demonstrating the importance of print media in local races.

As to broadcast media, CFIF argues that West Virginia's electioneering statute, unlike the federal counterpart, does not refer to an electronic database of media outlets to ascertain the listening audience (CFIF's Memorandum at 16), but neither its Complaint nor Supplemental Complaint complain of this feature, rendering it a non-issue in this litigation.  (Doc.'s 1 and 55.)  Likewise, CFIF's related charge that a political advertiser cannot ascertain how many people will receive a newspaper or periodical so as to know whether an ad is an "electioneering communication" was not pled and is not at issue here.[17]

CFIF attacks the "relatively small triggering thresholds" – i.e., small compared to the federal counterpart – associated with West Virginia's electioneering definition (CFIF's Memorandum at 16; Complaint at 14).  This claim was mooted when those numbers were increased to match BCRA's threshold.  (*See* Doc. 194 at 3.)

**C**.    **CFIF Has No Basis to Challenge the Exemptions to "Electioneering Communications**."

CFIF challenges as unjustified or vague certain statutory exemptions in the definition of "electioneering communications."  (CFIF Memorandum at 17-27.)  Defendants rely on their previous discussions of these allegations.[18]

---

[17]Newspaper and periodical circulation figures and other data are available online at http://www.accessabc.com/ among other sites.  CFIF's and WVFL's pleadings complain about ascertaining the circulation of leaflets, pamphlets, internet communications, and so forth – not newspapers and periodicals.  CFIF's Complaint also questions when a print ad is "disseminated", but this "issue" was not raised in this (or any other) motion nor otherwise expanded upon.  (Doc. 1 at 14-15.)

[18]Doc.'s 176 at 25-37; 194 at 17-19; and 199 at 10; all incorporated herein by reference.

Further, CFIF's challenge to certain of these exemptions is flawed in its invocation of the Equal Protection Clause (CFIF Memorandum at 18-20, 23-24) in that *CFIF's pleadings contain no counts based on said Clause* (Doc.'s 1 and 55).   Further, with respect to its equal protection challenge to the statutory exemption of communications supporting or opposing legislation, CFIF does not claim to be injured by the statutory distinction of which it complains; i.e.,that its ability to engage in independent expenditures is hampered by the exemption.  CFIF, thus, cannot demonstrate the standing necessary to an Article III case or controversy.  "One component of the case-or-controversy requirement is standing, which requires a plaintiff to demonstrate the now-familiar elements of injury in fact, causation, and redressability."  *Lance v. Coffman*, 549 U.S. 437, 439 (2007).  Here, CFIF cannot demonstrate an injury caused by the exemption of which it complains.

CFIF's equal protection arguments mistakenly invoke "strict scrutiny" despite that such scrutiny is reserved for content-based *restrictions* on speech, not reporting requirements:

> Disclaimer and disclosure requirements may burden the ability to speak, but they "impose no ceiling on campaign-related activities," *Buckley,* 424 U.S., at 64, 96 S.Ct. 612, and "do not prevent anyone from speaking," *McConnell, supra,* at 201, 124 S.Ct. 619 (internal quotation marks and brackets omitted). The Court has subjected these requirements to "exacting scrutiny," which requires a "substantial relation" between the disclosure requirement and a "sufficiently important" governmental interest. *Buckley, supra,* at 64, 66, 96 S.Ct. 612 (internal quotation marks omitted); see *McConnell, supra,* at 231-232, 124 S.Ct. 619.

*Citizens United v. Federal Election Com'n,*558 U.S. ----, 130 S.Ct. 876, 914 (January 21, 2010).

CFIF also alleges (and pled) that the statutory exemption for communications "promoting or opposing" legislation is vague, but this Court has already determined that the nearly identical phrase, "supporting or opposing," is *not* vague in the context of the statutory definition of political committee.  (Doc. 155 at 26-31.)  Given that said ruling pertained to a phrase defining *prohibited* activity, it follows that a similar phrase would more easily pass muster when defining *exempt*

14

activity, because any ambiguity in the phrase would work to *enlarge* the exemption from regulation

to the *benefit* of the speaker by applying the "rule of lenity" in interpreting criminal statutes.

**D.      The Reporting Requirements Are Not Vague.**

      **1.      "Persons sharing or exercising control" means corporate officers and directors and their like.**

The State agrees with CFIF and the Federal Elections Commission (FEC) that the "persons

sharing or exercising direction or control over the activities of the person making the expenditure"

for an electioneering communication refers to the "officers, directors, executive directors or their

equivalent," etc. (CFIF's Memorandum at 27-28.) Indeed, in the process of updating the reporting

form for organizations making independent expenditures, that definition is being inserted directly

into the relevant forms to aid the filer in interpreting this reporting requirement. (*See* affidavit

appended as Exhibit B.) This construction of the purportedly vague terminology is consistent with

the purposes of the reporting requirements – to disclose the persons in control of the organization

that made the expenditure. This construction is also consistent with West Virginia's decision to

model its reporting requirements after 2 U.S.C. § 434(f)(2)(A), which uses the identical "vague"

phrase – "persons sharing or exercising control" – and which was interpreted by the FEC to mean

"officers, directors, executive directors," etc. 11 C.F.R. § 104.20(a)(3).

CFIF argues that this Court is not at liberty to so construe the challenged phrase, as that

would invade the legislative process, and should instead simply strike the phrase as unconstitutional.

(CFIF Memorandum at 28.) However, CFIF cites no caselaw addressing similar phraseology in

BCRA or elsewhere nor any cases suggesting that this Court is at liberty to ignore the narrowing

construction hereby proffered by the State executive agency charged with the statute's enforcement.

"In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting

15

construction that a state court or enforcement agency has proffered." *Flipside*, *supra*, 455 U.S. at 495.

> It has long been a tenet of First Amendment law that in determining a facial challenge to a statute, if it be 'readily susceptible' to a narrowing construction that would make it constitutional, it will be upheld.

*Virginia v. Am. Booksellers Ass'n, Inc*., 484 U.S. 383, 397 (1988).  Consequently, this claim does not warrant declaratory relief.

### 2.    CFIF is not subject to West Virginia Code § 3-8-5.

CFIF challenges as vague certain statutory phrases used in Code § 3-8-5 that define those financial transactions that must be periodically reported by candidates, political committees, and corporations "supporting a political committee established pursuant to [Code § 3-8-8(b)(1)(C)]."[19] (CFIF Memorandum at 28-31.)  CFIF, however, has neither alleged nor shown that it is any of these things, nor have said reporting requirements ever been enforced against CFIF or any other corporation for making independent expenditures for either express advocacy or electioneering communications.  (*See* affidavit appended as Exhibit C.)

The entities to whom these reporting requirements apply is clarified in a subsequent section, Code § 3-8-5b, that specifies that such financial statements must be filed only by candidates and political committees, of which CFIF is neither.  (*Id*.)  Thus, CFIF has no claim that it is impacted by these requirements.

Even if the challenged statute (Code § 3-8-5) *did* apply to CFIF, CFIF's vagueness challenge lacks merit.  The statute requires the reporting of receipts and expenditures "for political purposes," which is defined as "supporting or opposing the nomination, election or defeat of one or more

---

[19]The subsection in brackets is now § 3-8-8(c)(1)(C) and defines "political action committee."

candidates." Code § 3-8-1a(23).  CFIF argues that "supporting or opposing" is vague, but this Court has already ruled otherwise in the context of WVFL's "fear" of being regulated as a political committee, the definition of which includes the same phrase.  (Doc. 155 at 26-31.)[20]  Further, CFIF does not ask that the statute or phrase be stricken as unconstitutional, but only that it be narrowly construed to apply only to persons engaging in express advocacy.  (CFIF's Memorandum at 31.) The statute is *already* limited to persons "expressly advocating the election or defeat of a clearly identified candidate" (Code § 3-8-5(a)), thus mooting CFIF's claim.[21]

### 3.     The State's requirement that donors be disclosed is not vague.

CFIF's Complaint (at p. 16) alleges that Code § 3-8-2(b)(5), which requires disclosure of contributors "whose contributions were used to pay for electioneering communications" is vague.

---

[20]As a sub-argument, CFIF also considers the definition of the items to be reported ("financial transaction") to be unduly "vague." (Doc. 211 at 30.)  However, CFIF's Complaint alleged only that the requirement to report such transactions was "burdensome."  (Doc. 1 at ¶ 10(c).)  There were no vagueness or overbreadth allegations made with respect to the definition of "financial transaction" and thus this "issue" cannot be resolved in this lawsuit.

[21]Regardless of whether one uses the statutory definition of "expressly advocating" or *Buckley*'s "magic words" definition, CFIF's communications are clearly not express advocacy and, indeed, CFIF so argues at pages 32-34 of its Memorandum.  CFIF's Complaint (Doc. 1) and its first Motion for Preliminary Injunction (Doc. 4) state its intent to "speak about justice issues in West Virginia during the period prior to the upcoming primary and general elections [of 2008]." (Doc. 1 at 3.) Jeffrey L. Mazzella, the President of CFIF, stated under oath:  "The Center has initiated this lawsuit to vindicate its right to engage in independent speech on public issues in the months leading up to West Virginia's May 13, 2008, primary election and November 4, 2008, general election." (Doc. 4-2 at p. 5.)  CFIF's "Supplemental [Amended] Complaint" asserted that it "continues to wish to engage in . . . public speech that will include the names of West Virginia candidates in the periods prior to elections, including the November 4 general election [of 2008]." (Doc. 55 at 1.)  In particular, CFIF wanted to broadcast an ad referring the audience to CFIF's website for information about Attorney General McGraw.  (Third Declaration of Jeffrey Mazzella [Doc. 90-2] at 3-4.) Examples of CFIF's mailings are appended to its Memorandum (Doc. 211) and admonish readers to call Darrell McGraw and "tell him to give the people's money back."  All the above was clearly issue-advocacy not subject to Code § 3-8-5 under *any* construction thereof.

CFIF's Memorandum (at p.31) argues that "an over-eager enforcer could seek disclosure of the sources of funds that entered a speaker's general treasury months or years earlier."  However, the statute does not require disclosure of all sources of general treasury funds, but only those contributors "who contributed a total of more than one thousand dollars between the first day of the preceding calendar year and the disclosure date."

Nothing in these requirements is "vague."  Similar reporting requirements were upheld in *McConnell v. FEC*, 540 U.S. 93, 196 (2003), which holding was reaffirmed in *Citizens United* (130 S.Ct. at 916).  This may explain why CFIF does *not* seek a declaration that these requirements are unconstitutional.  Rather, CFIF's argument is really that the reporting requirement is too onerous to the extent that it reaches general donations not earmarked for electioneering communications or independent expenditures.  This is revealed by the relief sought by CFIF – that this Court construe the statute so as to incorporate the FEC's regulation regarding the parallel federal statute, which regulation limits the disclosure requirement to donors responding to solicitations requesting funds for electioneering communications or earmarked for such by the donor.  (CFIF's Memorandum at 32.)  The FEC's regulation, however, was a discretionary act, not a constitutional ruling, and was based on testimony taken at its public hearings regarding "the inordinate amount of effort" required to disclose general contributions.  72 Fed. Reg. at 72911 (Dec. 26, 2007).  No such evidence has been presented to this Court, nor has CFIF even suggested that this requirement is onerous as applied to CFIF.

CFIF also seeks a similar construction of Code § 3-8-2(b)(1), which requires disclosure of contributions made after the first day of the preceding calendar year "for the purpose of furthering [independent expenditures]."  This requirement first appeared in the 2010 amendments and has not

18

been challenged in CFIF's pleadings. However, because this particular reporting requirement is already limited to contributions "for the purpose of furthering" independent expenditures, it already addresses CFIF's concern that the reporting of general donations would be onerous. In any event, not having been pled or developed with evidence, nor supported by any caselaw, this issue should not be addressed in this case.

## II.

## <u>RESPONSE TO WVFL'S CLAIMS</u>

Much of WVFL's Brief (Doc. 211) constitutes a summary of legal propositions stated in the abstract, without logically connecting them to WVFL's claims regarding West Virginia's campaign finance statutes. (*See*, *e.g.*, *Id.* at 4-11.) Only where WVFL has articulated such a connection does this Memorandum respond. (A much better source for discerning the relief WVFL is seeking is its Second Summary Judgment Motion (Doc. 209) at pages 20-21), wherein three broad claims are articulated that are hereafter addressed *seriatim*.)

**A**.   **West Virginia's Definitions of Political Committee,
PAC, and Unaffiliated-PAC Are Narrow and Clear.**

WVFL's Second Motion for Summary Judgment repeats the arguments previously made in support of its Motion for Preliminary Injunction (Docket 112, 113) that it fears being regulated as a "political committee" (or a PAC or an unaffiliated-PAC) despite that it does not have the "major purpose of supporting or opposing a political candidate."[22]  The Supreme Court and other courts have repeatedly held that the regulation of campaign expenditures by political committees and PAC's cannot be justified under the First Amendment unless the regulations are limited to

---

[22]Doc. 211 at 11-12 and 21-36.

19

organizations that have such a "major purpose." *See N.C. Right to Life v. Leake*, 525 F.3d 274, 287

(4th Cir. 2008).  Moreover, this Court has already held that WVFL's fears, if real, are not objectively

reasonable, because West Virginia law regulates only those committees "organized for the purpose

of supporting or opposing the nomination or election of one or more candidates."  W. Va. Code §

3-8-1a(21).  (Doc. 155 at 25-32.)  WVFL speculates that there is a *possibility* that this language

*could* be construed to reach organizations organized for several purposes, one of which is the

support or opposition of a particular candidate.[23]  This Court, however, has already determined that

the statute is *not* susceptible of such a construction (Doc. 155 at 29) and that, even if it were applied

broadly to include committees with the primary or major purpose of supporting or opposing a

candidate, it could *still* not be applied to WVFL.  (*Id.* at 32.)  WVFL has never been regulated as a

committee of any kind, nor threatened with such regulation, nor are its alleged fears justified.  There

is no case or controversy presented by this claim, and it should be dismissed.

Further, because WVFL is not regulated as a committee and is not injured by the definitions

of "committee," it lacks standing to complain of any alleged "overbreadth" in those definitions.

While the "overbreadth" doctrine may allow a plaintiff to assert theories of unconstitutionality that

depend upon a provision's impact on speech other than his own, it does *not* relieve him of the burden

---

[23]A party's ability to speculate as to possible interpretations of allegedly vague or overbroad statutory terms do not make them so.  *See American Ass'n of People with Disabilities v. Herrera*, 690 F.Supp.2d 1183, 1222 -1223 (D.N.M.,2010), wherein the Court stated:

> The Court will not invalidate the challenged law merely because the Plaintiffs can speculate different ways to interpret the term 'assist.' *See Washington State Grange v. Washington State Republican Party,* 552 U.S. at 450, 128 S.Ct. 1184 ("Claims of facial invalidity often rest on speculation," and consequently "raise the risk of premature interpretation of statutes on the basis of factually barebones records.").

of showing an injury to himself that creates a justiciable controversy sufficient to invoke federal court jurisdiction. *State v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984).

**B.     West Virginia May Validly Impose Disclosure, Disclaimer
         and Reporting Requirements on Independent Expenditures.**

WVFL, like CFIF, argues that disclosure, disclaimer, and reporting requirements may be imposed upon independent expenditures only if the communications constitute *Buckley*-style express advocacy (the "magic words" test) or are electioneering communications. (WVFL's Brief at 36-53.) Both use this premise to attack West Virginia's definition of "expressly advocating."[24]   However, whereas CFIF relies solely upon Due Process vagueness arguments to make this assertion, WVFL appears to also be arguing that a state's interests in promoting transparency in political campaigns will justify such regulation only as to the two enumerated classes of communications.

One of the propositions upon which WVFL builds this argument is the notion that the "appeal to vote" test – WVFL's name for the "functional equivalent of express advocacy" – of *WRTL II* "no longer serves any constitutional purpose," in part because it was developed in the context of the now-obsolete ban on corporate express-advocacy.   While this may be true for purposes of defining the boundaries of the State's power to regulate political speech, this observation actually *hinders* WVFL's argument, because *Citizens United* makes clear that the State's interest in such transparency extends well *beyond* that former boundary:

---

[24]Unlike CFIF, WVFL's pleadings contain nothing attacking the language now appearing in subsection (B) of the definition (Code 3-8-1a(12)). *See* Doc. 128 at ¶ 87.  Like CFIF, WVFL has never filed any pleading attacking subsection (C) of the definition, which was inserted in 2010.  Like CFIF, WVFL's attack on the pre-2010 language that subsection (C) replaced is moot, as argued in the Memorandum in Support of Defendant's Motion to Dismiss as Moot (Doc. 194) at 11 and 13-14, which argument is hereby incorporated by reference.

The Court has explained that disclosure is a less restrictive alternative to more comprehensive regulations of speech. See, *e.g., MCFL,* 479 U.S., at 262, 107 S.Ct. 616. In *Buckley,* the Court upheld a disclosure requirement for independent expenditures even though it invalidated a provision that imposed a ceiling on those expenditures. 424 U.S., at 75-76, 96 S.Ct. 612. In *McConnell,* three Justices who would have found § 441b to be unconstitutional nonetheless voted to uphold BCRA's disclosure and disclaimer requirements. 540 U.S., at 321, 124 S.Ct. 619 (opinion of KENNEDY, J., joined by Rehnquist, C.J., and SCALIA, J.). And the Court has upheld registration and disclosure requirements on lobbyists, even though Congress has no power to ban lobbying itself. *United States v. Harriss,* 347 U.S. 612, 625, 74 S.Ct. 808, 98 L.Ed. 989 (1954) (Congress "has merely provided for a modicum of information from those who for hire attempt to influence legislation or who collect or spend funds for that purpose"). *For these reasons, we reject Citizens United's contention that the disclosure requirements must be limited to speech that is the functional equivalent of express advocacy.*

130 S.Ct. at 915.

Despite the lifting of this boundary, West Virginia continues to limit its reporting requirements for independent expenditures (other than "electioneering communications") to communications that are either express advocacy or the functional equivalent thereof (Code § 3-8-1a(12)), so it remains well within whatever more-lenient boundaries on its regulatory power that may be developed following *Citizens United.*

The "appeal to vote" test, however obsolete it may be as a boundary on State power, remains useful in this case because we know, from past Supreme Court decisions, that its language ("no other reasonable interpretation than as an appeal to vote . . .") is clear and objective and will withstand Due Process vagueness scrutiny.  (*See* Section I.A.2. of this Memorandum.)

The remainder of WVFL's argument (that the State has no power to regulate independent expenditures outside the context of "electioneering communications") depends on the faulty reasoning of *Leake*, which has already been fully addressed in Section I.A.3. of this Memorandum.

As to the specific disclosure, disclaimer, and reporting requirements imposed upon those making independent expenditures (including independent expenditures for "electioneering communications") WVFL suggests in its Motion that each is onerous in some respect or another but, with one exception, cites no authority that the burden is unjustified given the State's indisputable interest in transparency.[25]

To the extent that WVFL complains of the requirement to file financial statements (Code § 3-8-5 and 3-8-5b), these are not required of WVFL because it is neither a candidate nor a committee. (*See* Section I.D.2. of this Memorandum.)

C.    **Electioneering Communications.**

WVFL's Motion and Memorandum mention electioneering communications, but make no discernable separate argument in regards thereto, instead bundling electioneering communications in with independent expenditures.  Thus, no separate argument is made here.  Further, the State incorporates here its argument in section I.B. of this Memorandum, made in response to CFIF's parallel claim.

---

[25]The one exception is the "24 and 48 hour reporting requirements" in West Virginia Code § 3-8-2b(a).  (WVFL's Brief at 51.)  However, despite that these reporting requirements have been in existence since the beginning of this litigation, WVFL has never undertaken to challenge them in its pleadings and they are not part of this lawsuit.  WVFL asserts that it matters not that it failed to challenge these requirements in any of its pleadings or motions to date, because, in its "Prayer for Relief," it listed the reporting statute as one of several that hinged on the definition of "express advocacy," which definition *was* challenged. (Doc. 209 at 17, referring to Doc. 128 at ¶ 232.) WVFL cites *Citizens United* for the proposition that new arguments in support of a "claim" may be asserted on appeal (130 S.Ct. at 893), but this proposition is inapposite, as the "claim" WVFL asserted were the defects in the definition of "express advocacy," not the "onerousness" of the reporting statute.

**III.**

**NEITHER CFIF NOR WVFL NEED ANY**
**FURTHER RELIEF AS TO PAST SPEECH**

Both CFIF and WVFL claim to need further relief to quell their purported fears of further prosecution for their past speech, despite this Court's preliminary injunctions, despite the repeal of the ban on corporate independent expenditures, and despite the dramatic changes to the remaining statutory provisions that render their claims as to past speech moot. (CFIF's Memorandum at 32-25; WVFL's Motion at 18.) Said arguments have already been fully addressed in conjunction with the briefing on the Defendants' Motion to Dismiss as Moot, which arguments are hereby incorporated by reference. (Doc. 194 at 4-5, 16-17; Doc. 199 at 1-7.)[26]

**IV.**

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motions for Summary Judgment must be denied.

Respectfully submitted,

NATALIE E. TENNANT, SECRETARY OF STATE OF WEST VIRGINIA and GARY A. COLLIAS, WILLIAM N. RENZELLI, ROBERT RUPP and CINDY SMITH, in their official capacities as members of the West Virginia State Election Commission

By Counsel,

---

[26]Although the Motion to Dismiss as Moot was denied, the denial was not on a basis that addressed this particular topic. Further, the State interprets the Court's denial of that Motion to be "without prejudice," as the denial appeared to be premised on a desire for more information before making a ruling as to whether any specific claim was moot.

24

DARRELL V. McGRAW, JR.
ATTORNEY GENERAL

/s/ *Silas B. Taylor*
Silas B. Taylor
Senior Deputy Attorney General
Office of the Attorney General
State Capitol Complex
Building 1, Room E-26
Charleston, West Virginia 25305-0220
Telephone:     (304) 558-2021
Fax:           (304) 558-0140
E-mail:        silastaylor@yahoo.com
*Counsel for Natalie E. Tennant, Secretary of*
*State of West Virginia, and Gary A. Collias, William N. Renzelli,*
*Robert Rupp and Cindy Smith, in their official capacities*
*as members of the West Virginia State Election Commission*

## <u>CERTIFICATE OF SERVICE</u>

I, Silas B. Taylor, Senior Deputy Attorney General, do hereby certify that on the 7th day of

October 2010, I electronically filed the foregoing "Defendants' Memorandum in Response to

Plaintiffs' Second (or Renewed) Motions for Summary Judgment" with the Clerk of the Court using

the CM/ECF system which will send notification of such filing to the following:

William C. Porth, Esq.                      Shirley J. Stanton, Esq.
Robinson, McElwee                           Stanton Law Firm
Post Office Box 1791                        Post Office Box 968
Charleston, West Virginia  25326            Fairmont, WV  26555

Thomas W. Kirby, Esq.                       Joseph L. Jenkins, Esq.
Wiley Rein, LLP                             Preservati Law Offices
1776 K Street, NW                           Post Office Box 1431
Washington, DC  20006                       Charleston, WV  25325

James Bopp, Jr., Esq.
Bopp, Coleson & Bostrom
One South Sixth Street
Terre Haute, IN  47807-3510


I hereby certify that I have mailed by United States Postal Service the document to the

following non CM/ECF participants:

Robbin Stewart
Post Office Box 29164
Cumberland, IN  46229-0164


/s/   *Silas B. Taylor*
Silas B. Taylor
Senior Deputy Attorney General

Office of the Attorney General
State Capitol Complex
Building 1, Room E-26
Charleston, West Virginia 25305-0220
Telephone:      (304) 558-2021
Fax:            (304) 558-0140
E-mail:         silastaylor@yahoo.com